## BRADLEY FERTILIZER COMPANY v. JAMES A. TAYLOR.

*Discovery—Disclosure before Trial—Examination of Party—Attachment for Contempt—Commitment—Appeal.*

1. A party to an action, by waiving objection to the time or place of making it, may give validity to an order that would otherwise be void, provided the Court has general jurisdiction of the controversy; therefore, where a defendant, after assenting to an order made by a Judge in a county other than that in which the action was pending but within the same judicial district, directing him to appear before a commissioner for examination, under sections 580 and 581 of *The Code*, appeared before such commissioner in obedience to the requirements of the order: *Held*, that it was too late to withdraw his assent voluntarily given to every part of the order when first made and by refusing to answer pertinent questions he made himself amenable, as for contempt, and liable to be attached and punished.

2. The power to commit to the common jail a person refusing to testify before a commissioner, as provided for in section 1362 of *The Code*, is not given exclusively, if at all, to the commissioner, but he may invoke the aid of the Judge from whom he derives his appointment, and whose authority is defied.

3. The proceeding for the examination of a party to an action under sections 580 and 581 of *The Code*, being ancillary to the main action, the Court has authority without his consent to make an order in a county other than that in which the action is pending, but within the district, committing him for contempt.

4. Where the Judge directed the Sheriff to commit one refusing to answer questions propounded to him in such examination to the common jail until he should be willing to answer: *Held*, to be error since it was an attempted delegation of judicial power to an executive officer, and allowed the Sheriff to determine how his prisoner should sufficiently demonstrate his willingness to testify or what was such a compliance with the order as to justify his release.

5. In such case the order should direct the issuing of a *capias*, or that defendant be arrested and brought before the Court to answer as for contempt.

6. An appeal from an order of commitment before trial of the main action will not be dismissed as premature.

This ACTION was brought to and complaint was filed at August Term, 1892, of HARNETT Superior Court.

The pleadings show that in January, 1891, and again in January, 1892, the defendant signed contracts by which he was to receive from plaintiff "Sea Fowl" guano at a certain price, f. o. b. cars, Dunn, N. C., and on receipt of goods and invoice, or not later than May 1st of said year, the defendant Taylor contracted to execute to plaintiff his notes payable on 15th November and December of said years, and on January 1st of the succeeding years. In each of said contracts it is provided that these notes are not to be considered as a settlement, but as an evidence of defendant's responsibility for the goods. In said contracts is also the following clause: "It is understood and agreed that said fertilizers, and the specific cash, checks, notes, accounts and all the proceeds from the same are held by you (defendant) in trust for us (plaintiff) as our (plaintiff's) property until all your notes given to us are paid in full." The plaintiff sues for $766.67, represented by the defendant's note payable January 1, 1892, and given for goods obtained of plaintiff during 1891; also for $230 for goods obtained of plaintiff during 1892 by defendant, for which no note was given. The sworn complaint, after alleging defendant Taylor's indebtedness, recites that demand had been made upon him, as the trustee for plaintiff, for any of the fertilizers obtained from plaintiff in his possession or under his control, and the specific cash, checks, notes, accounts and all the proceeds from same which may have come into his hands or control by sales made of plaintiff's fertilizers since January 29, 1891; that said demand had been ignored by defendant, and that plaintiff believes defendant still holds at least a portion of the fertilizers, or the cash, notes, etc., representing the proceeds of sales of same, though no information could be obtained in regard to same from said trustee Taylor.

Among other things plaintiff prayed that defendant be declared trustee for it; that he be enjoined from disposing of the notes, securities, etc., which he held in trust; that the remainder on account, and that the proceeds of all notes, etc., when collected, be applied as credits on plaintiff's claim.

Upon hearing the sworn complaint used as an affidavit, the Hon. H. R. Bryan, Judge, issued an order on August 10th, returnable at Chambers in Goldsboro on August 29th, restraining defendant from disposing of any of plaintiff's fertilizers or any of the proceeds of same, etc., and requiring defendant Taylor to file at the hearing a sworn statement of account as to his dealings in connection with all fertilizers received from plaintiff since January 25, 1891 (date of contract of 1891). The hearing and restraints were continued by the Court until September 14th, at Goldsboro, when and where the defendant appeared in person and by counsel. After hearing the affidavits and arguments an injunction was granted, a receiver was appointed, and by CONSENT and for the convenience of parties, plaintiff and defendant, James Pearsall, in lieu of the Court, was appointed a commissioner to take in Harnett county the examination under oath of the defendant, James A. Taylor, and cause the said James A. Taylor to sign the same, and transmit, with all accounts,  *   *   *   to the Clerk of Harnett Superior Court  *   *   *  before the Fall Term, 1892, said examination to begin on September 22d, etc.

The receiver was agreed upon between plaintiff and defendant, and it was further agreed that he should not be required to give bond. At the hearing the Court did not require defendant to produce any account. There was no appeal from the order of September 14, 1892. On September 22d, and again on September 26th, defendant appeared before Commissioner Pearsall, and was examined by plain-

tiff's counsel, when defendant answered certain questions but refused to answer others, though the commissioner overruled his objections except one. The commissioner having transmitted to Judge Bryan all the questions asked and answers made, and reported the defendant's refusal to answer, and it further appearing by affidavit in behalf of the plaintiff that defendant had refused to answer questions and had not delivered to the receiver at least a portion of the property, as required to do by the order of September 14th, the Court, on October ——, 1892, issued an order requiring the defendant, James A. Taylor, to answer the said questions, and transfer to the receiver aforesaid the said mortgages and notes, or show cause before him at Goldsboro, on Tuesday, the 18th day of October, 1892, at 12 o'clock m., why he should not be attached for contempt. This order was served on October 10th. Defendant still refused to deliver to the receiver the notes, etc., as specified in the orders, and did not answer the questions, and upon his failure to show cause for not so doing the Court, after reciting the facts, issued an order requiring the Sheriff of Harnett county to arrest the defendant and commit him to jail, and there detain him until he complied with the order of the Court by answering the questions and by delivering to the receiver the trust property or (suggested by counsel for defendant) a bond in lieu of said property.

From this judgment the defendant appealed.

*Mr. H. McD. Robinson*, for plaintiff.
*Mr. F. P. Jones*, for defendant (appellant).

Avery, J.: The statute (*The Code*, §§580 and 581) permits either plaintiff or defendant, upon notice, to subject the adversary party or person adversely interested in the action to examination before the Clerk or Judge, or a com-

missioner appointed by the Court, for the purpose of eliciting evidence in support of his contention in the controversy. *LaFontaine* v. *Underwriters' Association*, 83 N. C., 132; *Vann* v. *Lawrence*, 111 N. C., 32; *Helms* v *Green*, 105 N. C., 251. The parties to an action, by waiving objection to the time or place of making it, may give validity to an order that would otherwise be void if the Court has general jurisdiction of the controversy. But consent will not confer jurisdiction over the subject-matter of the suit upon a Court forbidden or not empowered by law to take cognizance. *Harrell* v. *Peebles*, 79 N. C., 26; *Shackelford* v. *Miller*, 91 N. C., 181; *Hervey* v. *Edmunds*, 68 N. C., 243; *McNeill* v. *Hodges*, 99 N. C., 248. After assenting to the order made at Goldsboro the defendant appeared before the referee in obedience to its requirements at the place designated and the hour specified. It was too late then to withdraw his assent, voluntarily given to every part of it when first made. So that the result must be the same, were we to concede that but for such assent it might have been necessary to apply to the Clerk or await the coming of the Judge into the county. *Skinner* v. *Terry*, 107 N. C., 103; *Godwin* v. *Monds*, 101 N. C., 354.

If the commissioner had been appointed by the Judge while sitting at Chambers in Harnett county it would have been proper to have directed him to return the examination and papers under his hand and seal to the Clerk of the Superior Court of that county before the next term of the Court. The assent of the defendant to a change of *venue* did not otherwise change the nature of the proceeding, or dispense with the necessity for its return in the prescribed way to the proper Court. Assigning for his refusal only the insufficient reason that the proceeding was to be so certified to the Clerk, the defendant declined to answer in whole or in part many questions propounded with the pal-

pable purpose of eliciting information, which, according to the apparently correct construction of the contract contended for by the plaintiff company, might manifestly become indispensable in filing the pleadings or prosecuting the action.    The notes and mortgages executed to secure the guano sold and the books showing accounts of sales were presumably in the possession of the defendant, and yet, if the parties had not, as the plaintiff insisted, abrogated the original contract, a just settlement could not be had until these papers should be produced, nor could the plaintiff know precisely what amount was due from defendant without access to them.    The plaintiff had unquestionably the right to the aid of the Court in compelling the production of all documentary evidence necessary or pertinent in the preparation of the complaint or the development of the case on the trial.    *Commissioners* v. *Lemly,* 85 N. C., 341; *Austin* v. *Secrest,* 91 N. C., 214; *McLeod* v. *Bullard,* 84 N. C., 515.    By declining to answer a series of questions, calculated and intended to elicit information that seemed essential to the prosecution of the suit, and which was nevertheless within his own exclusive knowledge, and failing to assign a more substantial reason than that given for his refusal, the defendant made himself amenable, as for contempt, and liable to be attached and punished, and the Judge not only had the power but it was his duty to maintain the authority of the Court by compelling a compliance with its lawful orders.    *LaFontaine* v. *Underwriters' Association, supra.*

The commissioner was acting for the Court and it was the duty of the defendant to answer proper questions propounded by him, just as though the examination had been conducted before the Judge or Clerk.    *The Code,* §1362, provides that " Commissioners to take depositions appointed by the Courts of this State or by the Courts of the States

and Territories of the United States, arbitrators, referees and all persons acting under a commission issuing from any court of record of this State are hereby empowered to issue subpœnas, etc., and to administer oaths to said witnesses to the end that they may give their testimony, * * * and any witness appearing before any of the said persons and refusing to give his testimony on oath touching such matters as he may be lawfully examined unto, shall be committed, by warrant of the person before whom he shall so refuse, to the common jail of the county, there to remain until he may be willing to give his evidence." Whether the person (Pearsall), before whom the examination was had, had the authority to commit the defendant or not, it is certain that the power if it existed was not exclusive. The section quoted was in any view only directory, and the commissioner might invoke the power of the Judge, whose authority had been defied when the witness declined to submit to an examination which had been ordered, even though, under the statute, he was himself clothed with concurrent authority to compel the witness to answer.

In *Commissioners* v. *Lemly, supra,* the Clerk of the Court issued a summons to the defendant to appear before him and produce certain books and papers, and though he, under the statute (C. C. P., 334; *The Code,* §581), was clothed with precisely the same authority as the Judge, yet, declining to exercise it, he allowed an appeal from his order overruling the defendant's objections, and left the Court in term time to deal with the question of contempt. The order of the Clerk was affirmed in the Superior Court, but no motion was made to attach the defendant. On appeal Chief Justice SMITH, for the Court, said : " We should have some hesitancy in sustaining the appeal but that the plaintiffs are deprived of important evidence to sustain their action and the cause may still proceed in making full

preparations for the trial notwithstanding the appeal." In *State* v. *Wylde*, 110 N. C., 500, the appeal was dismissed for a fatal defect in the prosecution bond, and the point really involved in *Vann* v. *Lawrence*, 111 N. C., 32, if the appellant had had a status in this Court, would have been whether it was necessary to obtain leave of Court below to take the examination of an adverse party previous to the trial and before the Clerk.

In the case of *Commissioners* v. *Lemly, supra*, the jurisdiction of this Court to review the order of the Court below depending upon precisely the same question that is involved in that at bar, was drawn in question. The defendant had appealed from the order of the person before whom the examination was had, overruling his objection to producing the papers and making the disclosures required. The opinion in Vann's case must not be misunderstood as overruling Lemly's case. In *Guilford County* v. *The Georgia Company*, 109 N. C., 310, the appeal was from a ruling that the summons was not properly served, and the case is no more analogous to ours than *Vann* v. *Lawrence*. In Vann's case the Court suggest a criterion for testing the question whether an appeal lies from any interlocutory order, which is perhaps the safest that we can adopt. It is involved in the question whether the delay in reviewing the ruling excepted to, till after final judgment, would probably subject either of the parties to irreparable loss by depriving him of protection to his rights, which a subsequent appeal could not afford. 1 Freeman Judgment, sec. 35. If a plaintiff is put to a disadvantage in the prosecution of a suit for want of information within the exclusive knowledge of the defendant and which he had a right to elicit, by the refusal of the latter to answer on examination, a ruling upon his exception at the close of a long contest conducted in the dark, that he can begin *de novo* and get the information

essential to his success, is only less satisfactory than that of a defendant who has been subjected to criminal punishment by reason of his own enforced disclosures on such examination before the appellate Court informs him of his right to withhold them. We do not think it necessary to overrule the decision in *Commissioners* v. *Lemly*, which involved the precise point raised in this case, by dismissing the appeal as premature. It is unsafe to forecast future developments and declare that a question involving the most vital rights of parties may not arise on an inquisitorial examination, allowed before the enactment of *The Code* only in Courts of Equity and there guarded by well-defined rules limiting the scope of the interrogation for the protection of the rights of the person subjected to it.

· While, therefore, as a general rule, this Court discountenances fragmentary appeals, yet, where the issue involved is whether a plaintiff shall compel a discovery of information peculiarly within the knowledge of the defendant and essential to the successful prosecution of a suit, in which he showed an apparent right to recover, as well as where the party being examined is about to be compelled to give evidence that will expose him to prosecution for crime or to allow the plaintiff to pry into his defence by eliciting information in no way essential to the support of his own cause, the ruling of the Court below is always subject to review, because it involves a substantial right. Cooley Const. Lim., marg. p. 374; Adams' Eq., pp. 2 to 4; Thompson on Trials, sec. 744; 1 Pom. Eq. Jur., sec. 201.

The commissioner, upon the refusal of the defendant to answer, sent the proceedings before him to the Judge of the district at Chambers, who at first returned them without action. Whereupon the plaintiff obtained an order that the defendant appear before the Judge at Chambers in Goldsboro and show cause why he should not be attached.

On failure of the defendant to appear in obedience to this order, it was adjudged by the Court at Chambers that the defendant turn over the notes, etc., received for guano sold for the plaintiff company, and that the Sheriff arrest the said defendant and commit him to jail till he comply with the order of the Court.

Being brought in the prescribed mode before the commissioner, the defendant in refusing to answer unquestionably rendered himself liable to be punished as for contempt under the express provision of the statute. *The Code*, §654 (4). But, if the subsection referred to had been omitted, courts of record are empowered by another subsection, section 654 (7), to punish as for contempt "in all other cases where attachments and proceedings as for contempt have been heretofore (before 1868) adopted and practiced in courts of record in this State, to enforce the civil remedies or protect the rights of any party to an action." Before that, either the Superior Court or a commissioner appointed by it, could punish for contempt a witness who declined to answer a proper question propounded to him on examination before the latter. Rev. Code, ch. 31, sec. 64; *The Code*, §1362. The old statute is still unrepealed and in nowise conflicts with the later enactment. The power given carries with it, by necessary implication, authority to pursue the practice adopted before 1868, in so far as it had not been abolished by the Constitution or statutes, if necessary to the enforcement of the remedies and the protection of the rights relating to the conduct of the action. As we have shown, it was impossible to afford adequate redress or such relief as would have been given by a Court of Equity, on a bill of discovery in aid of another action at law, to the plaintiff without compelling the defendant to make disclosures of his dealing, as agent or trustee for the plaintiff, promptly, so as to subserve the purpose of shaping his

pleadings and aiding in the preparation for trial. The cases (*Bynum* v. *Powe,* 97 N. C., 374, and *McNeill* v. *Hodges,* 99 N. C., 248) cited by counsel to sustain his contention that the order to attach for contempt was void, if made outside of Harnett county (where the action was pending), though within the judicial district, have no application to the point presented here. Admitting that the authority of the Judges to make interlocutory orders, outside of such county and without consent of parties, is restricted to cases where they derive their power from some provision of our statutes, it is nevertheless a well-established principle that a statutory provision, clothing a Court with certain authority, implies a grant of power, in exercising it, to compel obedience to its decrees by promptly resorting to attachment, if necessary to do so, in order that the ends of justice may not be defeated by the delay incident to such defiance. If we concede the general rule, cases where the authority to make interlocutory orders is conferred by necessary implication as incident to the exercise of powers given, as well as where it is granted in express terms, constitute exceptions to it. *McPhail* v. *Parker,* decided at this term; *Young* v. *Rollins,* 90 N. C., 125; *Pain* v. *Pain,* 80 N. C., 322. In substituting an examination for a bill of discovery the Legislature intended to expedite trials by allowing the plaintiff to acquire information in vacation, and prepare his pleadings in advance of an approaching term. The proceeding is ancillary to the main action, and therefore the spirit of *The Code,* as well as the letter of the rule prescribed in *McPhail* v. *Parker,* warranted the Judge in making a proper order at Goldsboro, within the district.

It was error, however, to direct the Sheriff to commit the defendant to jail till he should be willing to answer, leaving him to determine how his prisoner should sufficiently demonstrate his willingness, or what was such a compliance

with the order as to justify his release. Such an order involved necessarily an attempted delegation of judicial power to the executive officer of the Court, and to that extent was void. *Strickland* v. *Cox*, 102 N. C., 411; *In re Deaton*, 105 N. C., 59. When the defendant refused to appear upon notice that he was required to show cause, he was in contempt, and the order should have directed the issuing of a *capias*, which was the process issued by the Court of Equity under such circumstances (3 Blk., marg. pp. 443, 444), or, in consonance with the spirit of *The Code*, he could have made an order that Taylor be arrested and brought before him to answer as for contempt.

The judgment, therefore, should be so modified as to direct the Sheriff to arrest the defendant, and him safely keep, so that he have him before the Judge at Chambers at a time and place specified, or before the Court at next term, to answer as for contempt in disobeying the order.

· Let this opinion be certified to the end that judgment may be rendered accordingly. The defendant must pay the costs of the appeal. Judgment Modified.