State on the Relation of A. R. HERRING *et al.* v. W. J. PUGH *et al.*

(Decided June 7, 1900.)

*Proceedings for Contempt—Venue—Waiver—Jurisdiction —Appeal.*

1. During the pendency of an appeal, the court below still retains jurisdiction to hear motions and grant orders, not affected by the judgment appealed from.
2. Where a party is served with a rule granted by the Judge resident in the district to attend and answer in a county outside of the district before another Judge, and he does attend and answer, without standing upon his rights, he will be deemed to have waived the question of *venue.*
3. A disclaimer of all purpose to commit any contempt of court, accompanied with a refusal to obey the lawful order, issued in the cause, is no answer to the rule, and will not screen the offender from the judgment for contempt sanctioned by statute.

RULE FOR CONTEMPT against the relators for disobeying an order in the case pending in SAMPSON Superior Court, during an appeal to Supreme Court, made by Judge *Allen* of the Sixth Judicial District, returnable before Judge *Bryan* at New Bern, and heard July 25, 1899, who made the rule absolute, and sentenced the relators to fine and imprisonment. Defendants appealed.

The case is fully stated in the opinion.

*Messrs. Stevens & Beasley, Marion Butler,* and *Geo. E. Butler,* for appellant.

*Messrs. Allen & Dortch, J. D. Kerr,* and *E. W. Kerr,* for appellee.

MONTGOMERY, J. This was a proceeding in contempt, heard before Judge *Bryan* at New Bern, on the 25th of July,

1899. The respondents, A. R. Herring, R. A. Ingram and W. J. Faircloth, were elected in 1897 members of the Board of Education of Sampson County for a term of three years. W. J. Pugh, W. A. Bissell and L. L. Mathis were appointed by the General Assembly of 1899 members of the County Board of School Directors, to enter upon the duties of their office immediately upon their qualification. The new Board (the Board of School Directors) were in charge of affairs after their qualification on the 20th day of April, 1899, when the respondents in this proceeding brought an action for themselves in the name of the State against Pugh, Bissell and Mathis, for the recovery of their office. The case was heard before Judge *Timberlake,* at May Term, 1899, of the Superior Court, a jury trial having been waived, and the Court being authorized to find the facts and all the issues involved therein. It was adjudged by the Court that the relators in that action, the respondents here, Herring, Ingram and Faircloth, recover of the defendants the office of County Board of School Directors, together with all the books and papers in the custody of the defendants or within their power, belonging to the office. The defendants appealed from this judgment. Afterwards, and while the appeal was pending in the Supreme Court, and while the defendants were still in possession of the office and exercising the duties thereof, the relators in that action, the respondents here, got possession of the room in which the sessions of the Board were held, and also of the books and papers of the office, and of the key of the room, against the consent of the defendants, and without legal process. The defendants, then, by a motion in the original cause, based upon affidavits, procured an order from the Honorable O. H. Allen, resident Judge of the Sixth Judicial District, in which the relators, Herring, Ingram and Faircloth, were restrained from exercising any function or

power, or from performing any duty as a member of the Board of School Directors, or of the Board of Education of Sampson County. The relators were also ordered to appear before Judge *Bryan,* presiding Judge of the Sixth Judicial District at New Bern, on the 25th day of July, 1899, to show cause, if any they had, why the order should not be continued until the final determination of the action. Afterwards, another order upon affidavits was procured from Judge *Allen* in which it was recited that, while the plaintiff relators were not actively exercising the functions of the office, they still had the key, and books and papers in their possession, and were obstructing the proper administration of the public school affairs of the County, and the relators were ordered to forthwith deliver the room, key, books and papers and reports to the defendants. And the relators were further ordered to appear before Judge *Bryan,* at the same time and place, there to show cause, if any they had, why the order should not be continued until the final hearing of the case, as mentioned in the first order. The relators, upon the making of the last-mentioned order by Judge *Allen,* filed a paper in the cause, in which they declined to obey the order to deliver the papers and books and key to the new board. That fact having been made known to Judge *Allen,* a motion was made by the defendants' counsel for a rule upon the relators for contempt in declining to obey the order of Judge *Allen* commanding them to deliver the books and papers to the defendants. It was ordered that the relators appear before a Judge of the Superior Court, and show cause, if any they have, why they should not be held guilty of contempt, and punished therefor, for a wilful disobedience of Judge *Allen's* order, in which they were commanded to deliver the books and papers to the new Board, and the order was made returnable before Judge *Bryan* at the same time and place mentioned in the

former orders—at New Bern, on the 25th day of July, 1899. The relators appeared and answered the rule, declining and refusing to obey the order of Judge *Allen* to deliver the books and papers and key. Whereupon Judge *Bryan,* in a judgment in which the facts were found, inflicted upon the relators the extreme penalty of the law—a fine in the sum of $250 each, and imprisonment in the common jail of Sampson County until they complied with the order of Judge *Allen,* that is, until they should deliver the books, papers, etc., to the defendants, or be otherwise discharged according to law.

It appeared in the proceedings that the relators had received a circular letter from C. H. Mebane, Superintendent of Public Instruction, addressed to the County Superintendent of Schools, in which the following language was used: "I have frequent inquiries as to effect of the recent decision of Judge *Timberlake* in the case of the Sampson County School Board, and also inquiries as to the effect this will have as to the County Boards throughout the State, if said decision is sustained by the Supreme Court. I write this letter to say in reply to the first inquiry that the decision of the Sampson County case does not affect any County Board of Education except the County Board of Education in Sampson County. I recognize the old County Board of Education of Sampson County because the Superior Court of said county has so ordered, and I obey this order until it is passed upon or otherwise ordered by the Supreme Court." And that the relators had also seen a letter, written after Judge *Timberlake's* judgment, from the Attorney-General directed to Street Brewer, Superintendent of Public Schools, which letter was in the following words: "In reply to your letter of recent date, I will say that it is your duty to recognize the *de facto* school officers. An officer *de facto* is one who is in actual possession of the office in the exercise of its functions

and discharge of its duties. From the facts stated by you, I am of the opinion that the old School Board are the rightful officers until the Supreme Court shall decide otherwise, and should be recognized by you. 8 Am. and Eng. Enc. of Law, 786."

From the judgment of Judge *Bryan* the relators appealed to the Supreme Court, and assigned the following errors:

1. For that the Court had no jurisdiction to entertain a motion in the cause after final judgment.

2. For that the Court had no jurisdiction to issue any restraining order after final judgment, and the perfecting of the appeal to the Supreme Court, and any order made therein is absolutely void.

3. For that the Court had no power to issue a restraining order to compel the plaintiffs, without notice before a hearing, to deliver the room, books and papers to defendants, and such order was void because it was contrary to Art. I, sec. 17, of the Constitution of North Carolina, and of Art. XIV, of the Constitution of the United States, in that it deprived the plaintiffs of their private property without due process of law.

4. For that it appears from the facts found that the first and second restraining order, upon which the motion for contempt is based, has not been served upon the plaintiffs, and it was error in the Court to grant the rule to show cause for contempt.

5. For that the matters involved in their motion were *res judicata.*

6. For that his Honor *Henry R. Bryan,* has no jurisdiction to hear and determine this proceeding for contempt against the plaintiffs in the county of Craven, the same being outside of the Sixth Judicial District and outside of the county of Sampson, where the said contempt, it is alleged,

was committed, the same not being in violation of any order issued by his Honor *Henry R. Bryan.*

7. For that the plaintiffs purged themselves by answer of any intent whatever to commit any contempt of Court, and it was error in the Court to so find and hold.

8. For that his Honor failed to find the facts at the time of the trial and before judgment, and spread the same upon the minutes of the court; in fact, no facts were found until after respondents served their case with assignments of error, which were attempted to be answered by the finding of facts.

9. For that the acts complained of are not such as tended to defeat, impair or prejudice the rights or remedies of the defendants in any action pending in the Supreme Court.

The first two assignments of error may be considered together. The counsel of the respondents—relators in the original action—cited numerous authorities going to show that the effect of an appeal from a final judgment is to remove the cause into another jurisdiction—that of the appellate court—and to make the affirmation of it therein a final and complete disposition of the controversy involved in the action. That is certainly the general rule. *Manufacturing Co. v. Buxton,*105 N. C., 76; *Isler v. Brown,*69 N. C., 125; *Ellerson v. Raleigh,* 89 N. C., 125; *Green v .Griffin,* 95 N. C., 52. But there are powers of the Court in which the judgment was originally rendered, in the nature of auxiliary agencies, that can be exercised in furtherance of the object of the suit. In *Hinson v. Adrian,* 91 N. C., 372, there was a final judgment for the distribution of an amount of money in the hands of the Clerk from which judgment there was an appeal to this Court. No order or direction concerning the safe-keeping or investment of the money pending the appeal had been made, and under the view that the judgment below had been vacated by the appeal, and the whole case transferred to another jurisdic-

tion, one of the persons, interested in the distribution of the money, made a motion in the Supreme Court for an order for the intermediate disposition of the fund.    This Court said, in substance, that that view was a misconception of the legal effect of the appeal; that the fund was not withdrawn from the protection of the Superior Court, but that it remained there until the final decision of the appeal had been rendered, and that meanwhile the court below might make a proper order concerning the safety or investment of the fund.    In that case, the Court said further: "It is only the subject-matter involved in the judgment that is thus placed beyond interference, and not those incidental matters appertaining to jurisdiction, and often necessary in securing full fruits of the judgment that may be rendered in the appellate court."    And besides, sec. 558, of The Code, is *itself* in language too plain to admit of a doubt that the court in which the judgment was rendered still retains jurisdiction to hear motions and grant orders, except such as concern the subject-matter of the suit.    The statute reads:    "Whenever an appeal is perfected, as provided by this Code, it stays all further proceedings in the court below upon the judgment appealed from or upon the matter embraced therein; but the court below may proceed upon any other matter included in the action, and not affected by the judgment appealed from."

The subject-matter of the suit out of which grew the proceedings now before us was the office of School Director of Sampson County.    The books and papers, which were the means of performing properly the duties of the office, were taken from the new Board after the members of that Board had perfected their appeal bond, and while they were still holding and executing the duties of their office.    Clearly then the Judge had the right by a motion in the cause to order a restitution of the books and papers.    Such an order did not

touch the subject-matter of the action—which was the office itself. The proceeding was in the nature of a mandatory injunction, and such injunctions are recognized under the law, in such cases. Pomeroy's Eq. Jur., sec. 1359.

The third assignment of error can not be sustained. The books and papers were not the property of the appellants; they were the property of the county of Sampson, to be used by its School Board of Education for the public good, and the new Board, during the pendency of their appeal were entitled to them until the case should have been determined in the Supreme Court, at least.

There is no force in the fourth assignment of error, for the respondents appeared at New Bern on the 25th day of July, 1899, the day mentioned for the hearing of the contempt rule, and answered in form declining and refusing to surrender the books and papers.

The fifth assignment is answered in the consideration of the first and second.

As to the sixth assignment of error: The question is not presented as to whether a Judge could, by an order, compel the attendance of a person outside of the judicial district in which he lives, and outside of the county where the action was tried, to answer a rule for contempt. The order of Judge *Allen* requiring the respondents to appear at New Bern, outside of the judicial district in which the respondents lived, was served on the respondents, and they appeared, as we have said, at the time and place mentioned in the order; and they not only appeared but they answered the rule, and declined, in the presence of the Judge, to obey the order to deliver the books and papers. They did not stand on their rights to have the contempt order heard in Sampson County where the original judgment was had. It was not a question of jurisdiction; it was a question of *venue,* and the respondents con-

sented to have the matter heard outside of their district and county.    There was no positive consent entered in writing, but there was no objection ever entered until the case on appeal was prepared for this Court.

In *Godwin v. Monds,* 101 N. C., 354, it is held that a judgment could not be set aside by a Judge outside the county in which it was rendered, unless it was done by *common consent,* and that that consent should appear in writing, or the Judge should set out the consent in the order which he makes in the cause, or such consent should appear by fair implication from what appeared in the record.    See also *Ledbetter v. Pinner,* 120 N. C., 457; *Fertilizer Co. v. Taylor,* 112 N. C., 145.    In *Godwin v. Monds, supra,* the Court said: "That it did not appear that the plaintiffs, or their counsel, were present at the hearing of the motion, and did not object, thereby implying such consent."

But in the case before us, as we have said, the respondents were present with their counsel, and answered the rule and made no objection.    They, therefore, consented to the *venue,* by fair implication.

The seventh assignment of error can not be sustained.    It is true that the respondents in their answer, denied all purpose to commit any contempt of the court, but they refused to obey the order of Judge *Allen* commanding them to deliver the books and papers to the new Board.    The contempt is the refusal to obey the order of the Court.    They had it in their power to do so.    *Pain v. Pain,* 80 N. C., 322; *Boyette v. Vaughan,* 89 N. C., 27.

The eighth assignment of error is without merit, and is based upon the misapprehension of the facts.    Judge *Bryan,* in his judgment, recited the facts which constituted the contempt, and they were also set out in the last order of Judge *Allen.*

The ninth assignment of error can not be sustained. The conduct of the respondents was in willful disobedience of a lawful order of Judge *Allen,* who had jurisdiction of the question.

Because of the serious nature of the matters involved in this proceeding, matters in which were involved not only the property, but also the personal liberty of three citizens of the State, we have given the case a most careful consideration, and our conclusion is that Judge *Allen* had jurisdiction of the matters mentioned in his orders; that the books and papers and key should have been returned to the new Board under the last order of Judge *Allen,* as the remedy sought by the new Board was a proper one; that the appearance at New Bern, outside of the district and county in which the original judgment was had, and in which the respondents resided, and their answer to the rule at that place and time, their counsel being present and aiding them, and no objection having been entered against the hearing of the contempt rule at New Bern, constituted a consent to have the contempt rule heard at the time and place when and where it was heard; and that, therefore, the judgment of Judge *Bryan* must be affirmed.

Of course, as the main action for the recovery of the offices by the plaintiffs (who are the respondents here), has been decided at the last term of the court, in favor of the plaintiffs (the respondents), that part of the judgment of Judge *Bryan* as to the imprisonment of the respondents is vacated. They are now entitled to keep the books, papers and key, and any other belongings to the Board of School Directors of Sampson County, under the decision of this Court above referred to.

This case is, in its effect upon the respondents, one of great and peculiar hardship. There appears to have been no purpose on their part to do anything except to claim and to

avail themselves of their legal rights as they were advised by
their counsel.    They were confirmed in their course, also, by
the letters of the State officer, from which we have quoted.
By the decision of this Court, too, they have been declared
entitled to the offices, which were the subject-matter of the
main action, and to the possession of the books and papers per-
taining thereto.    We can afford them no relief, however, but
must sustain the order and judgment of his Honor Judge
*Bryan,* because of the reasons given in this opinion.    Yet it
may be that relief might be sought successfully through an-
other source—executive clemency—for, under the provisions
of the Constitution of the State, Art. III, sec. 6, such power
is given to the Governor.    A contempt of Court is an offense
against the State and not against the Judge personally.    The
Constitution of the United States, Art. II, sec. 2, invests
the President of the United States with the same power as to
offenses against the United States, with the same exception
—in cases of impeachment.    *Ex Parte Muller,* 7 Blatch., 23.
The same power has been exercised by the Governor of other
States.    *State v. Sanvinet,* 24 La. Ann., 119; *Ex Parte
Hickey,* 4 Smed. and M. (Miss.), 751.

Modified and affirmed.


FAIRCLOTH, C. J., dissenting.    My objection to the opinion
is that the orders were made without authority, that is, that
the Judge had no jurisdiction.    We know that the Superior
Court Judges hold the courts in the several judicial districts
successively, called rotation.    Code, sec. 911.    We know
that the Fall Term, 1899, of the courts in the Sixth Judicial
District, began July 1, and continued until December 31.
Acts 1885, chap. 180, sec. 8.    We also know that the resi-
dent Judge of the Second District was the presiding Judge of
the Sixth District during the Fall Term, 1899.    The first

order in this contempt proceeding, upon motion in the original action, was made July 8, 1899, the second on the 12th of July, and the third on the 19th of July. These orders were made, not by the presiding Judge of the district, but by the resident Judge, who was then the presiding Judge of another district. The order to show cause, etc., thus made was returnable before the presiding Judge, then at New Bern in the Second District, who made the final order adjudging the plaintiffs in contempt in failing to obey the order made in the Sixth District by another Judge.

Jurisdiction is a term frequently used, and sometimes without an accurate understanding of its precise application. Jurisdiction of the court is essential, and without it any judgment is a nullity. As to the scope of the term "jurisdiction" there was for a time some controversy, but "the rule now supported by high and abundant authority and excellent reason, is that the court must not only have jurisdiction over the person and the matter, but authority to render the *particular* judgment." 7 Am. and Eng. Enc. (2d Ed.), 36.

The only acts constituting contempt in North Carolina are specified by statute, all other acts recognized at common law, as such, are repealed and annulled. Code, sec. 648.

The action in which this motion was made is *quo warranto* for the office of the Board of Education of Sampson County, and it had been adjudged by the Superior Court that the plaintiffs were entitled to the office, from which judgment the defendants appealed to this Court, where the judgment was affirmed. Pending said appeal, the plaintiffs peaceably entered the office and took possession of the key and the school books. They were ordered to deliver the books and key to the defendants. They declined to do so, on the ground that they were entitled to keep them, and on the ground that the order was made by a Judge who was without authority to do so.

HERRING *v.* PUGH.

This refusal is alleged to be a violation, and contempt of court, as defined in The Code, sec. 648, sub-sec. 4. The language of that section is "willful disobedience of any process or order *lawfully* issued by any court." It will be noted that the order must be "lawfully issued," and that involves the question whether the order was issued by a court having jurisdiction and authority to render this particular judgment.

It is argued that pending an appeal the Court may make incidental orders not affecting the matter in the appeal, such as making new parties, requiring better security for the costs, and protecting any property in *custodia legis,* and the like. I concede all that. But what court or Judge can make even these incidental orders? Are they not to be made at term time by the Judge then presiding in that district? Can any other Judge make such orders at will out of term time? That is not my understanding of the practice heretofore. Suppose A sues B, both living in Currituck County, and one notifies the other to appear before the presiding Judge, who is then in Cherokee County, to show cause, etc. It occurs to me that the inconvenience of such practice is a sufficient reason for requiring such orders to be made returnable within the district and county where the parties live, and where the action is pending. Before rotation was allowed, each Judge acted only in his district, except by special commission. During that period, the Governor issued a commission to the Judge of the Sixth District to hold court in the Third District. A kindred question came to this Court, and the Court said: "A Superior Court Judge has no authority to vacate injunctions or to set aside attachments regularly granted, except for causes pending in his own district," which I understand means when he is on duty in his own district. * * * "Judges who exchange districts by the consent of the Gov-

ernor for a whole riding or a series of courts, take the place
of each other for all purposes during that series of courts.
When the Governor requires a Judge to hold a term of a court
for some county outside of his proper district, the authority
of the Judge is special; the jurisdiction of the proper Judge
of the district is superseded by that of the substituted Judge
in that county during the specified term, but not elsewhere,
nor for a longer time; the substituted Judge has, in respect to
all cases pending in the specified county during the specified
term, all the powers of the proper Judge of the district."
*Bear v. Cohen,* 65 N. C., 511, 519. "A District Court Judge
is not authorized to dissolve injunctions or to punish parties
for a contempt in disobeying an injunction, except in his own
district, unless he has been duly assigned to hold the court in
the county where the original process is returnable." *Mor-
ris v. Whitehead,* 65 N. C., 637. "The resident Judge of a
district has no other powers within such district in vacation,
than any other Judge of the Superior Court—that each Judge
of the Superior Court has general jurisdiction only in the
judicial district to which he is assigned by the statute, except
in cases of exchange," etc. *State v. Ray,* 97 N. C., 510, 514.
The statutes authorize any Judge to issue a restraining order
for twenty days, but that order must be returnable before the
resident or presiding Judge, as the case may be. There is
a scarcity of authorities on the main question, probably from
the fact that such a question is seldom presented.

Reasoning by analogy from the above authorities, it seems
to me that when the term of a presiding Judge, fixed by
statute, begins, he is the only Judge who can adjudge impor-
tant and grave questions in that district during the term.

If it be true, then, upon the facts before us, the order to
deliver up the key and books, and the order to show cause,
etc., were made by a Judge without authority or jurisdiction,

55——126

and of course all subsequent proceedings are void, including the final judgment for contempt.

I can not for a moment consider the possibility that the Executive will or may exercise his pardoning prerogative, if he has the power to do so.

I have written briefly, to avoid the just inference from my silence on this important question.

DOUGLAS, J., also dissents.