LUTHER E. GALYON AND OLLIE MAE BROWN GALYON v. ROY B. STUTTS AND VERNELLE A. STUTTS.

(Filed 24 November, 1954.)

**1. Contempt of Court § 2a—**

A direct contempt consists of words spoken or acts committed in the actual or constructive presence of the court while it is in session or during recess, which tend to subvert or prevent justice.

**2. Contempt § 2c—**

An indirect contempt is one committed outside the presence of the court, usually at a distance from it, which tends to degrade the court or interrupt, prevent, or impede the administration of justice.

**3. Contempt §§ 2a, 2b—**

The acts and omissions enumerated in G.S. 5-1 correspond to criminal contempt and involve offenses against the court and organized society, punishable for contempt for the purpose of preserving the power and vindicating the dignity of the court.

**4. Contempt of Court § 2c—**

The acts and omissions enumerated in G.S. 5-8 correspond to civil contempt and involve matters tending to defeat, impair, impede, or prejudice the rights or remedies of a party to an action pending in court, and are punishable as for contempt with the underlying purpose of preserving private rights by coercion.

**5. Contempt of Court §§ 2a, 2c—**

The refusal of a witness to testify at all, or his refusal to answer any legal or proper question is punishable for contempt under G.S. 5-1 (6), or as for contempt under G.S. 5-8 (4), depending upon the facts of the particular case.

**6. Same—**

The power of the court to require a witness to give proper responses is inherent and necessary for the furtherance of justice, and therefore, testimony which is obviously false or evasive is equivalent to a refusal to testify. G.S. 5-1 (6) and G.S. 5-8 (4).

**7. Contempt of Court § 3—**

Contempt committed in the immediate view and presence of the court may be punished summarily. G.S. 5-5.

**8. Contempt of Court § 4—**

The procedure to punish for indirect contempt is by order to show cause. G.S. 5-7.

**9. Same—**

A contempt against a subordinate officer appointed by a court, such as a commissioner, ordinarily is regarded as contempt of the authority of the appointing court, and the appointing court has power to punish such contempt even though the subordinate officer is also vested with the power to punish. G.S. 5-6.

**10. Contempt of Court § 4—**

Where the court undertakes to punish a contempt against a subordinate officer appointed by the court, an order to show cause, or other process constituting an initiatory accusation meeting the requirements of due process, must be issued, since the court has no direct knowledge of the facts constituting the alleged offense.

**11. Contempt of Court § 5—**

Where, in response to an order to produce records of his business for a designated period, defendant appears and testifies that the only business records kept by him were the cash register tapes, that these had been destroyed by rats, and therefore, he had no records or documents with which to comply with the order, and there is no evidence to the contrary, it is

error for the court to find and conclude that defendant was in contempt within the purview of G.S. 5-1 (4) for noncompliance with the order.

**12. Contempt of Court § 4—Show-cause order is necessary as basis for punishment for indirect contempt or for civil contempt.**

Upon an adverse examination before a commissioner appointed by the court, defendant's replies to pertinent questions were to the effect that he did not remember. The commissioner took no action to punish for contempt, but recessed the proceedings, and thereafter defendant was served with notice that plaintiffs would move before the judge at term, pursuant to G.S. 1-568.19, that defendant be held in contempt of court. At such hearing the court did not follow the procedure outlined in G.S. 1-568.18, but heard the matter as a proceeding for direct contempt under G.S. 5-1 (6), and entered judgment holding defendant guilty of wilful contempt. *Held:* Even conceding that defendant's testimony was so obviously evasive as to amount to a refusal to testify, G.S. 5-1 (6), the judgment is erroneous for application of the wrong procedural remedy, and also for failure to comply with the minimum accusatory requirements of due process, since the issuance of a show-cause order is necessary both in proceedings to punish for indirect contempt under G.S. 5-7 and in proceedings to punish as for contempt under G.S. 5-9.

APPEAL by defendant Roy B. Stutts from *Rousseau, J.,* at March Term, 1954, of RANDOLPH.

Contempt proceedings in civil action for rescission.

The defendant Roy B. Stutts (hereinafter referred to as the defendant) formerly operated a retail grocery business in the town of Liberty, North Carolina. In May, 1953, he sold the business, including stock in trade and fixtures, as a going concern to the plaintiffs. As part of the cash payment the plaintiffs conveyed to the defendants Stutts their home in Asheboro. The deferred balance of $13,000 was evidenced by note secured by chattel mortgage on the store fixtures and equipment.

In October, 1953, the plaintiffs, on allegations of fraud and deceit, instituted this action for the purpose of rescinding the contract of sale and all written instruments incident thereto, alleging in gist that the defendant fraudulently misrepresented the established character of the business as to its volume of sales and profits. The defendants answered denying all allegations of fraud.

After the complaint and answer were filed, the plaintiffs obtained orders of court directing the defendant to produce for inspection and copy certain books and records and requiring him to appear before a commissioner for adverse examination.

The defendant failed to produce any documents or records. However, he appeared on the appointed day before the commissioner and was examined adversely at length by counsel for the plaintiffs.

Following adjournment of the adverse examination the defendant was served with notice that the plaintiffs would move before the presiding

Judge at the March 1954 Term of court for an order declaring the defendant to be in contempt of court for his failure to produce records as directed. The defendant also was served with notice that the plaintiffs, pursuant to G.S. 1-568.19, would move before the presiding Judge for an order holding the defendant in contempt of court for his failure and refusal to answer questions asked on adverse examination.

When the cause came on for hearing, judgment was entered adjudging the defendant in wilful contempt of court (1) for failure to produce the records as previously directed and (2) for refusal to answer questions propounded on adverse examination. He was ordered to pay the costs of the adverse examination and the further sum of $50. From the judgment so entered the defendant appealed, assigning errors.

*Ottway Burton* for appellant.

*Brooks, McLendon, Brim & Holderness and Moser & Moser* for appellees.

JOHNSON, J. Contempts of court are classified in two main divisions, namely: direct and indirect, the test being whether the contempt is perpetrated within or beyond the presence of the court. A direct contempt consists of words spoken or acts committed in the actual or constructive presence of the court while it is in session (*S. v. Woodfin,* 27 N.C. 199; *S. v. Nowell,* 156 N.C. 648, 72 S.E. 590) or during recess (*Ex parte McCown,* 139 N.C. 95, 51 S.E. 957; *S. v. Little,* 175 N.C. 743, 94 S.E. 680) which tend to subvert or prevent justice. An indirect contempt is one committed outside the presence of the court, usually at a distance from it, which tends to degrade the court or interrupt, prevent, or impede the administration of justice. *In re Parker,* 177 N.C. 463, 99 S.E. 342; *Snow v. Hawkes,* 183 N.C. 365, 111 S.E. 62. See also 12 Am. Jur., Contempt, section 4; 17 C.J.S., Contempt, sections 3 and 4.

Proceedings for contempt are of two classes, criminal and civil. Criminal proceedings are those brought to preserve the power and to vindicate the dignity of the court and to punish for disobedience of its processes or orders. Civil proceedings are those instituted to preserve and enforce the rights of the parties to actions and to compel obedience to orders and decrees made for the benefit of the suitors. Criminal proceedings, involving as they do offenses against the courts and organized society, are punitive in their nature, and the government, the courts, and the people are interested in their prosecution. Whereas civil proceedings, having as their underlying purpose the preservation of private rights, are primarily remedial and coercive in their nature, and are usually prosecuted at the instance of an aggrieved suitor. 12 Am. Jur., Contempt, section 6.

With us contempts are defined and classified generally by two statutes: G.S. 5-1 and G.S. 5-8. These statutes recognize and preserve the fundamental distinction between civil and criminal contempt in substance but not in name. Acts or omissions which ordinarily constitute criminal contempt as defined in the textbooks are designated by our statute (G.S. 5-1) as punishable "for contempt," without further designation; the acts or omissions which ordinarily constitute civil contempt as defined in the books are designated by our statute (G.S. 5-8) as punishable "as for contempt." Thus, under our statutes the proceedings for criminal and civil contempt are "for contempt" and "as for contempt," respectively.

A person guilty of any of the acts or omissions enumerated in the eight subsections of G.S. 5-1 may be punished *for contempt,* because such acts or omissions have a direct tendency to interrupt the proceedings of the court or to impair the respect due to its authority. Whereas a person guilty of any of the acts or omissions described in the seven subsections of G.S. 5-8 is punishable *as for contempt,* because such acts or omissions tend to defeat, impair, impede, or prejudice the rights or remedies of a party to an action pending in court. *Luther v. Luther,* 234 N.C. 429, 67 S.E. 2d 345.

G.S. 5-1 (6) provides that "The contumacious and unlawful refusal of any person to be sworn as a witness, or, when so sworn, the like refusal to answer any legal and proper interrogatory" may be punished *for contempt.*

G.S. 5-8 (4) provides for punishment *as for contempt* of any person summoned as a witness "in refusing or neglecting to . . . attend, be sworn, or answer as such witness."

It is thus noted, from the tenor of the latter two statutes, that the refusal of a witness to testify at all or to answer any legal or proper question is made punishable both "as contempt" and "as for contempt." And since the power of the court over a witness in requiring proper responses is inherent and necessary for the furtherance of justice, it must be conceded that testimony which is obviously false or evasive is equivalent to a refusal to testify within the intent and meaning of the foregoing statutes, and therefore punishable "as contempt" or "as for contempt," depending upon the facts of the particular case. 12 Am. Jur., Contempt, sections 15 and 17.

G.S. 5-5 deals with direct contempt. It provides that "contempt committed in the immediate view and presence of the court may be punished summarily, but the court shall cause the particulars of the offense to be specified on the record, and a copy of the same to be attached to every committal, attachment or process in the nature of an execution founded on such judgment or order."

G.S. 5-7 deals with indirect contempt. It provides that "When the contempt is not committed in the immediate presence of the court, or so near as to interrupt its business, proceedings thereupon shall be by an order directing the offender to appear, within reasonable time, and show cause why he should not be attached for contempt . . ."

G.S. 5-9 provides: "Proceedings *as for contempt* shall be by an order directing the offender to appear within a reasonable time and show cause why he should not be attached for contempt." (Italics added.)

A contempt against a subordinate officer appointed by a court, such as a commissioner, ordinarily is regarded as contempt of the authority of the appointing court, and the appointing court has power to punish such contempt. This is true even where such subordinate officer, as with us under G.S. 5-6, is vested with the power to punish. See *Fertilizer Co. v. Taylor,* 112 N.C. 141, 17 S.E. 69; 17 C.J.S., Contempt, section 52. However, when the conduct complained of was before a commissioner or other subordinate officer of the court and the court has no direct knowledge of the facts constituting the alleged contempt, in order for the court to take original cognizance thereof and determine the question of contempt, the proceedings must follow the procedural requirements as prescribed for indirect contempt (G.S. 5-7) or "as for contempt" (G.S. 5-8) and be based on rule to show cause or other process constituting an initiatory accusation meeting the requirements of due process as prescribed by our statutes. See 17 C.J.S., Contempt, section 62, p. 74.

In the case at hand the defendant stands adjudged in contempt of court on two grounds: (1) for wilful failure and refusal to produce records and documents for inspection in compliance with a former order of the court, and (2) for wilful, contumacious, and unlawful failure and refusal to answer questions propounded on adverse examination. Both grounds are challenged by the defendant. We discuss them *seriatim.*

1. *The Failure to Produce Records.*—By order signed by Judge Martin the defendant was directed to produce "all of the documents, ledgers, journals, inventories, records and books" of his grocery business for the years 1951, 1952, and 1953. The court below found and concluded that the defendant wilfully failed and refused to comply with this order and that such failure and refusal amounted to contempt of court within the purview of G.S. 5-1 (4). The record does not support the finding and adjudication.

While the defendant produced no documents or records in response to the order, he did appear on the appointed date before the commissioner for the adverse examination. He was examined at length by counsel for the plaintiffs. The examination, as reported in question and answer form, is brought forward on the appeal and covers more than 40 pages of the record. In response to questions propounded by plaintiffs' counsel,

the defendant explained that he had no records or documents with which to comply with the order of Judge Martin. By way of explanation he said in substance that he retained no copies of his income tax returns and that he kept no ledgers, journals, or other like records in connection with the operation of the grocery business. His testimony discloses that the only business records kept by him were the "cash register receipts." As to these, he said they were stored in boxes in "the car house," and that "the rats ate them up, gnawed them up," to the extent they "were not fit to be salvaged," and when he found them in that condition, after sale of the business in 1953, he threw "them all out."

The record thus affirmatively discloses—with nothing appearing *contra* —that the defendant had no books or records with which to comply with the order of Judge Martin. Therefore, the court below erred in finding and concluding that the defendant was in contempt within the purview of G.S. 5-1 (4) for noncompliance with the order.

2. *The Failure or Refusal to Answer Questions on Adverse Examination.*—After the defendant testified he kept no books and records in connection with the grocery business and retained no copies of his income tax returns for the years he operated the business, he was examined at length in respect to the receipts and yearly profits of the business and the amount of income reported by him for tax purposes. To this line of questions his stock answer was "I don't remember" or "I don't know," and when asked if he knew the amount of his reported yearly income within $2,000, $5,000, and $10,000, he replied as to each figure that he did not know. After stating he had no recollection of the approximate amount he drew out of the business, he was asked this question: "Will your tax returns, Federal and State, for the years 1951 and 1952 . . . accurately show your income for these years?" Whereupon objection was interposed "on the ground of incrimination of the witness." The Commissioner responded: "If that is the ground for the objection, the only recourse is to take it to the Clerk." Counsel for the plaintiffs, after arguing at some length the relevancy of the question and the admissibility of the information sought, stated: "And the plaintiffs hereby except and appeal from the ruling of the Commissioner and for the reason that . . . the witness has refused to comply with the order of examination and has repeatedly refused in good faith (to) answer the questions." At this juncture the Commissioner noted a "recess for a ruling of the Clerk." The record discloses no ruling of the Clerk. Instead, the defendant on 1 March, 1954, was served with notice signed by the Clerk, notifying him that the plaintiffs, pursuant to G.S. 1-568.19, would move before Judge Rousseau at the March 1954 Civil Term of the Superior Court of Randolph County (1) that the defendant Roy B. Stutts be held for contempt of court for failure and refusal to answer the questions asked at the adverse

examination previously held on 19 February, 1954, (2) that the defendant be taxed with all costs of the action, and (3) that judgment by default be rendered against him because of such refusal.

It is significant that G.S. 1-568.19, the statute under which the defendant was notified the plaintiffs would move for relief, merely provides procedure for the enforcement of the immediately preceding section, G.S. 1-568.18, which prescribes the procedure to be followed in compelling answers on adverse examination.

While the notice served on the defendant stated the plaintiffs would move for relief under the foregoing statutes, the record nowhere discloses that any such relief was sought and no attempt was made to require the defendant to answer the question he had refused to answer immediately before the adverse examination was recessed. And it nowhere appears that the Clerk or Judge at any time ordered the defendant to answer any question or series of questions pursuant to the procedure prescribed in G.S. 1-568.18 and on which G.S. 1-568.19 is based.

On the contrary, the record discloses that when the cause came on for hearing the presiding Judge, upon consideration of the transcript of the adverse examination, found therefrom that in respect to numerous material questions propounded to the defendant he made no *bona fide* attempt to answer, but rather declared that he did not know the answers, when as a matter of ordinary experience he was charged with knowledge and recollection of the matters and things concerning which he was being interrogated. And upon such findings the court concluded and adjudged that the defendant's conduct by way of evasion amounted to failure and refusal to answer the questions and constituted direct contempt of court.

It thus appears that the defendant was cited to appear and respond to a motion or motions designed to compel him to answer a line of questions in respect to which he had refused to give answers on the ground of self-incrimination. Whereas no such inquiry was had. Instead, by summary procedure, without previous order to show cause, final judgment was entered adjudging the defendant to be in direct contempt of court within the purview of G.S. 5-1 (6) and G.S. 1-568.19.

Conceding, without deciding, that the defendant's testimony in pertinent aspects was so obviously evasive as to amount to a refusal to testify within the meaning of G.S. 5-1 (6), and that the Commissioner may have summarily attached him for direct contempt under authority of G.S. 5-6, even so, it here appears that the Commissioner did not take action. Rather, it appears that he recessed the examination and referred the matter to the presiding Judge, who heard it as a proceeding for direct contempt under G.S. 5-1 (6), notwithstanding he had no direct knowledge of the facts constituting the alleged contempt and notwithstanding the notice

to the defendant indicated the purpose of the hearing was to inquire into the question of his refusal to answer on the ground of self-incrimination.

The action of the court below in so adjudging the defendant to be in direct contempt must be held for error both for failure to comply with the minimum accusatory requirements of due process (*Buchanan v. Vance,* 237 N.C. 381, 75 S.E. 2d 240) and for application of the wrong procedural remedy. Since the presiding Judge had no direct knowledge of the facts constituting the alleged contempt, the appropriate procedure was that prescribed for "indirect contempt" under G.S. 5-7, or "as for contempt" under G.S. 5-8 (4) and G.S. 5-9, wherein the statutory procedure requires in each instance the issuance of a show-cause order before hearing.

For the errors indicated the judgment appealed from will be set aside and the cause will be remanded to the court below for such further orders and proceedings as may be appropriate under proper practice and procedure and in accord with this opinion. This without prejudice to the plaintiffs' rights to move for an order allowing further adverse examination of the defendant and making accessible to the plaintiffs the facts in respect to the defendant's income tax returns for the years 1951, 1952, and 1953.

Error and remanded.