THE STATE v. DUNNING.

The emergency clause in the act of *June* 14, 1852, regulating the remission of fines and forfeitures, declared the act to be in force from and after its being filed with the clerks of the Circuit Courts in their respective counties.

*Held*, that the legislature intended the act to be brought into force as soon as it could be distributed to the several counties, and though there is no express direction to the secretary of state to distribute it, the emergency clause implies such a direction.

*Held*, also, that the secretary of state is to be presumed to have done his duty, and hence, that the act was in force on the 20th day of *December*, 1852.

The power of the governor, under the present constitution, to remit fines and forfeitures, is not absolute. It can only be exercised pursuant to legislative direction.

APPEAL from the *Morgan* Circuit Court.

PERKINS, J.—Motion for execution upon a judgment on a forfeited recognizance. A remission of the judgment by the governor of the state, was relied upon to defeat the motion. The remission was dated *December* 20, 1852. It was objected that the remission was invalid—1. Because it was not made pursuant to the act of *June* 14, 1852 (1 R. S. p. 298), that act being in force. 2. Because, if said act was not in force, then the governor had no power to remit, the section of the constitution on the subject requiring legislation to bring the power into active operation.

The act of *June* 14, above referred to, is entitled " An act to regulate the remission of fines and forfeitures," consists of two sections, and provides, in the first, " that all applicants to the governor for the remission of fines and forfeitures, shall forward to him with their application, the opinion of the propriety of so doing, of a majority of the following officers in the county where the fine was assessed or forfeiture occurred, viz., the clerk of the Circuit Court, auditor, sheriff, county treasurer, and such officers as shall, from time to time, have the care and custody of the common school fund within the county." The second section states that, " as there is an emergency requiring the immediate taking effect of this act, it is declared to be in full force and effect from and after its being filed with the clerks of the Circuit Courts in their respective counties."

Two questions are made upon this act. 1. As to interpretation. 2. As to its being in force.

1. It would seem that it does not require the opinion of the officers named to be in favor of the remission, but that it requires their opinion to be communicated, for or against, as it may be, and that, after that, the governor may act; but this point need not be decided. As to its being in force, it is very clear that the legislature intended it should be brought into operation as soon as it could be distributed in the several counties of the state; and though there is no express direction to the secretary of state to so distribute it, we think the emergency clause fairly implies such a direction; for otherwise, it is perfectly nugatory. If such direction is implied, we would presume the secretary did his duty. In *Doe* v. *Collins*, 1 Ind. R. 24, a similar question arose, and was disposed of thus: " We are next to ascertain what was the law of *Indiana* at the date of the judgment. The execution law of 1843, amendatory of that of 1842, was approved on the 11th of *February*, and was published at *Indianapolis* on the 14th of the same month. It was, by a provision of the law, made the duty of the secretary of state to forward, immediately after its publication, a copy thereof to the clerk's office of each county in the state; and upon its being filed in any one of those offices, the act became the law of the county in which such office was. The judgment under consideration was rendered on the 28th of *February*, being a much longer time after the publication of the law than was necessary for the transmission of a copy of it to *Ripley* county. We presume, therefore, the contrary not being shown, that the law of 1843 was in force at the date of the judgment."

Should we apply the same rules to the case under consideration, it is manifest the law regulating remissions, &c., would be held in force.

The counsel for the defendant does not claim, as we understand him, that the requisitions of the act were complied with, but denies that it was in force, and insists that by the constitution the governor has absolute power to pardon, remit, &c. Before quoting the constitutional provi-

sion, it may be well to consider of the point of view from which it is to be looked at in construing it.

The theory acted upon by *English* monarchs has been, that they were the possessors, by divine right, of the supreme power, and that whatever of liberty the people enjoyed, was a gracious grant from them. *Magna Charta*, s. 1, and comment of Lord *Coke* thereon, in which he says certain language was used in the charter "to intimate that all liberties, at the first, were derived from the *Crowne*." Coke, Inst. vol. 3, pp. 2 and 5.   So Lord *Bacon*, the contemporary of *Coke*, (Works, vol. 3, p. 320,) in "The Office of Alienations," says: "When the king, whom our law understandeth to have been, at the first, both the supreme lord of all the persons, and sole owner of all the lands in his dominions," &c.

Hence, the foundation of the claim, by those monarchs, to exercise a power dispensing with the operation of laws. Hallam's Const. Hist. pp. 526, 527.   The power to pardon, and remit fines and forfeitures, is, substantially, a dispensing power.   Hallam, *supra.*—Vattel, p. 83, s. 173.

With us, the theory of government is different.   Here, the people possess the supreme power; and whatever of authority their rulers enjoy, is a gift freely made by the people.   *Lieber*, in his "Civil Liberty and Self-Government," vol. 2, p. 147, says—

"The fact that the pardoning power necessarily originated with the sovereign power, and that the rulers were considered the sovereigns, is the reason why, when jurists came to treat of the subject, they invariably presented it as an attribute indelibly inhering in the crown.   The monarch alone was considered the indisputable dispenser of pardon; and this again is the historical reason why we have always granted the pardoning privilege to the chief executive; because he stands, if any one visibly does, in the place of the monarch of other nations; forgetting that the monarch had the pardoning power, not because he is the chief executive, but because he was considered the sovereign—the self-sufficient power from which all others flow; while with us, the governor or president has but a delegated power,

and limited sphere of action, which by no means implies that we must necessarily or naturally delegate, along with the executive power, also the pardoning authority."

The governor, then, simply by virtue of his office as such, takes no power touching pardons—there is no such prerogative here. He derives his power from the constitution and laws alone. Does the constitution confer on him the absolute power? The section reads:

"He shall have the power to grant reprieves, commutations, and pardons, after conviction, for all offenses, except treason and cases of impeachment, subject to such regulations as may be provided by law. Upon conviction for treason, he shall have power to suspend the execution of the sentence, until the case shall be reported to the General Assembly, at its next meeting; when the General Assembly shall either grant a pardon, commute the sentence, direct the execution of the sentence, or grant a further reprieve. He shall have power to remit fines and forfeitures, under such regulations as may be prescribed by law; and shall report to the General Assembly, at its next meeting, each case of reprieve, commutation, or pardon granted, and also the names of all persons in whose favor remission of fines and forfeitures shall have been made, and the several amounts remitted: *Provided, however*, that the General Assembly may, by law, constitute a council, to be composed of officers of state, without whose advice and consent the governor shall not have power to grant pardons, in any case, except such as may, by law, be left to his sole power."

The new constitution differs from the old in few points more widely than upon this of the pardoning power. Two lines in the old, stood in the place of half a page in the new. It simply said: "He [the governor] shall have power to remit fines and forfeitures, grant reprieves and pardons, except in cases of impeachment." We know the object of the change. The granting of pardons, remissions, &c., had become an abuse, and it was the intention to arrest that abuse. Hence, we learn the spirit in which the new constitution, on this point, should be construed. Was it,

May Term, 1857.

THE STATE v. DUNNING.

then, the intention of the constitutional convention that the governor should possess the absolute power to pardon, remit, &c.? that the new, like the old constitution, in this particular, should execute itself? or was it intended that legislation should first prescribe regulations governing the exercise, of the power? Generally, constitutions are regarded as declaring principles and prohibitions to guide and limit legislation; and we think the power to grant remissions, in our new constitution, is not an exception; for in this case we limit ourselves to that, and, we think, properly, as, by analyzing the section of the constitution quoted, we discover that it distinguishes, as has the legislature in the act above set out, between pardons and remissions. Perhaps it confers different powers in regard to them; and this case involves that of remission only. But, to proceed to the analysis of the section:

In cases of treason and impeachment, the governor cannot pardon.

For all other offenses he can grant pardon, after conviction, subject to such regulations as may be provided by law; though the legislature may deprive him of the power of pardoning under any regulations, without the advice of a council.

Thus much as to pardons. As to remissions, the constitution says: "He shall have power to remit fines and forfeitures, under such regulations as may be prescribed by law." This is the whole grant of power as to remissions. Is it an absolute grant of authority to remit; of a power that can be exercised without regulations prescribed?

Would an authority to a mechanic to build a house under such regulations, and pursuant to such plan, as an architect should prescribe, authorize him to build it as he pleased, without waiting for any plan or regulation from the architect?

It is plain, we think, that the power of remission is not granted absolutely to the governor, but only the power of exercising it pursuant to legislative direction. If the remission ought to be made in this case, the statutory requirement can yet be complied with, and the remission granted.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

J. W. *Gordon*, for the state (1).

D. *M'Donald*, for the appellee (2).