NEW ORLEANS, MARCH, 1872.                    119

State ex rel. Van Orden v. Sauvinet, Civil Sheriff, etc.

No. 3869.—STATE OF LOUISIANA ex rel. W. VAN ORDEN *v.* C. S. SAU-
VINET, Civil Sheriff, etc.

The Supreme Court is vested with power to issue the writ of habeas corpus in a case where
a party to a suit before a district court has been imprisoned by the judge for a contempt
of court, if the amount in dispute in the main action is sufficient to give it jurisdiction of
the appeal, provided the contempt is connected with or grows out of the main action.

A contempt of court is an offense against the State, and not an offense against the judge per-
sonally, and therefore the order of the judge inflicting punishment for such contempt
comes within the range of the pardoning prerogatives vested by the constitution in the
Executive.

APPLICATION for a Writ of Habeas Corpus.    *Cooley, J.    George S.
Lacey* and *Chas. S. Rice,* for relator.    *C. T. Beamis,* for respondent.

Taliaferro, Justice, delivered the opinion of a majority of the judges
sitting at chambers to hear the habeas corpus granted in this cause.

TALIAFERRO, J.    The relator complains that he is under illegal
arrest and held in custody by the civil sheriff of the parish of Orleans
in obedience to an order rendered by the judge of the Sixth District
Court of the parish of Orleans, on the sixth of March, 1872, sentencing
him to arrest and to be held in custody by the sheriff for the term of
ten days for an alleged contempt of the orders of the said court.    He
alleges that for the offense charged against him, and for which he was
sentenced as aforesaid, and under pretense of which he is now under
arrest and deprived of his liberty, he has applied to and obtained from
the Governor of the State of Louisiana a full pardon and remission of
said offense, and that he has presented the same to the sheriff and
demanded his release, but notwithstanding the sheriff refuses to dis-
charge him unless under an order of the court which authorized the
arrest and detention of the relator.    He therefore applies for a writ of
habeas corpus directed to the said sheriff commanding him to bring
the relator before the Supreme Court of Louisiana or any of the judges
thereof, and show cause why he thus keeps the relator imprisoned and
deprived of his liberty, and why he should not be released and dis-
charged.    He prays for relief, etc.

The facts seem to be that in the month of February of the present
year suit was brought against Van Orden, the relator, by J. B. Louis
to recover from him a cash box and its contents, alleged to contain the
amount of thirty-five thousand dollars in money and public securities,
which box and its alleged contents had been deposited with the relator
for safe keeping.    A writ of sequestration was issued to take the box
out of the hands of the relator, and upon his refusal to deliver it he
was sentenced to be arrested by the sheriff and to be held in custody
by him for the period of ten days as for a contempt of court.    Appli-
cation was then made to the Governor of the State for a pardon which
was granted.    The sheriff, conceiving it to be his duty to hold the

party in custody until otherwise ordered by the court, declined to release the prisoner upon the presentation of the pardon granted by the Executive; and at this stage of the proceedings the application was made to this court or to any of the judges thereof for a writ of habeas corpus which was issued accordingly.

The questions for determination are—

*First*—Is this court or any of the judges composing it vested with power to issue the writ of habeas corpus prayed for in this case, and to maintain jurisdiction of the matters presented by the petition of the relator?

*Second*—Has the Governor of the State the power to grant a pardon to a party sentenced to imprisonment by a court for a contempt of its authority?

Article 792 of the Code of Practice provides that " The Supreme Court and each of the judges thereof shall have power to issue writs of habeas corpus at the instance of persons in actual custody, in cases when they may have appellate jurisdiction," etc. We regard the order under which the party in this case was arrested, and is held in custody by the sheriff, as constituting a part of the proceedings in the suit of Lewis v. Van Orden. The order of sequestration was rendered by the judge in the exercise of his judicial functions in determining the issues presented by the parties. The order of imprisonment consequent upon the relator's alleged contempt, forms part of the proceedings in the action pending. It grew out of and constituted an important part of those proceedings. It is not easy to disconnect it from them. We do not view it in the light of a separate, independent, isolated action or proceeding detached from the main action, and wholly unconnected with it. If we entertained a doubt on this point we should feel it to be our duty, in a case involving a question of personal liberty to assume jurisdiction. The matter in controversy between the parties to the suit is clearly within the jurisdiction of this court. Besides, the relator presents himself as occupying also another ground. If the order of imprisonment were considered a decree or judgment entirely distinct from the suit, in the prosecution of which it originated, that decree or judgment of the court is one from which the relator would have the right of appeal. He alleges under oath that that decree, by depriving him of his liberty, detention from his family and suspension from his business, injures him to an amount exceeding five hundred dollars.

The next inquiry is, has the Governor the prerogative of pardon in cases of conviction and punishment for contempt of the authority of a court. The investigation which we have been able to make of this question, does not satisfy us that the chief Executive officer of the State is without power to extend pardon to a party convicted and

punished for contempt of court. We find nothing in the constitution of the State which makes an exception in such cases. That the President of the United States is clothed with the power to grant pardons in cases where judges of the United States courts punish for contempts is clearly settled. 4 Opinions of Attorneys General, p. 458; 5 ditto, p. 579; Blatchford's Circuit Court Reports, vol. 7, p. 24, and cases there cited.

The analogy between the exercise of such a power by the President in all the States, in cases of the sort arising in the courts of the United States, and the exercise of that power in a single State by its Governor, in the same class of cases arising in the courts of a State, seems to be strong and well defined. There being no exception found in our State Constitution precluding in such cases the exercise of the pardoning prerogative by the Governor of the State, we feel no hesitancy in recognizing its existence. That the offense arising from a contempt of the authority of a court is one which, from its nature, should be summarily punished, to the end that an efficient and wholesome exercise of judicial powers may be had, no one will question. But the opinion entertained to some extent, that punishments decreed for such offenses must necessarily be inflicted at the stern arbitrament of the judge, without remission or abatement by the pardoning power, we do not find to rest upon any firm basis of principle or authority. A contempt of court is an offense against the State and not an offense against the judge personally. In such a case the State is the offended party, and it belongs to the State, acting through another department of its government, to pardon or not to pardon, at its discretion, the offender.

That this is a delicate power and should be used only in cases manifestly proper, we are at liberty in our private judgments to believe; while on the other hand we have no question that abuses in the exercise of the power of punishing for contempts may arise, although instances of the kind are rare. We can scarcely think it compatible with the genius of liberal government and free institutions, that there should be no shield to protect an individual against a tyrannical exercise by a judge of his power to punish for contempt, and therefore conclude that, upon the principle of checks and balances upon which our American governments are founded, it was not intended by the framers of them that the pardoning power should not reach a party unduly deprived of his liberty, by, it might be, a hasty and petulant fiat of a judge. That the power of pardoning in such cases is withheld from the executive departments of our State governments, the counsel representing the plaintiff in sequestration in the case before us, has not satisfied us by the authorities referred to in his brief. These seem to us to rest upon hypothesis and implications only, and

State ex rel. Van Orden v. Sauvinet, Civil Sheriff, etc.

indicate no positive constitutional provision withholding the power in question. We do not see the force of the reasoning used to support the deductions made. They seem to be little better than plausible conjecture.

But we are not without authority on the question of the power of the Governor of a State to grant pardons in cases of contempts. In 1844, Walter Hickey, of Vicksburg, Mississippi, was sentenced to fine and imprisonment for contempt of the Circuit Court of Mississippi. He was pardoned by Governor A. G. Brown, and released by the sheriff, but was immediately rearrested by order of the court. Upon application to Mr. Justice Thatcher of the High Court of Errors and Appeals of Mississippi (at that time presided over by Chief Justice Sharkey), a writ of habeas corpus was issued and Hickey was brought before him. The case being heard, the prisoner was discharged. Judge Thatcher in rendering his decree said: "The whole doctrine of contempts goes to the point that the offense is a wrong to the public, not to the person of the functionary to whom it is offered, considered merely as an individual. It follows then that the contempts of court are either crimes or misdemeanors in proportion to the aggravation of the offense, and as such are included within the pardoning power of this State." Smedes & Marshal R. vol. 4, 751. See also Blackstone, vol. 4, 231.

It is proper to add, that Lewis, the plaintiff in sequestration, has no interest or right of property in the punishment inflicted. It is no concern of his, but concerns the State alone; and the rule therefore, that when a private person (as an informer for example) has acquired a right of property in a penalty, the executive can not pardon, can have no application to this case.

It is not for us to deal with this subject on the basis of inquiry into the motives of the Executive in granting the pardon to the prisoner in this case, nor to pronounce the act discreet or otherwise. In the case here presented, it is not denied that the offense was committed. Neither is it pretended that the punishment meted out for the offense was wrongfully inflicted. The party under duress pleads the pardon and remission of the offense, and claims in virtue of that pardon to be released and set at large. Entertaining the views we have expressed, we think him entitled to the relief prayed for.

It is therefore ordered, that the writ be made peremptory and the prisoner discharged.

---

I concur in the opinion of Mr. Justice Taliaferro.

JOHN T. LUDELING, C. J.

---

Howe, J., *concurring.* I am not prepared to say that the pardon of

the Executive could legally release a party committed by a judge for purposes of coercion merely, and to enforce a private right; as a contumacious witness, a defendant in injunction under article 308, C. P., or a respondent in mandamus under article 843, C. P. It is highly probable that the element of private interest in the coercive process would prevent the State of Louisiana, through its Executive, from releasing the prisoner. 4 Blackstone, 285.

But there is no such element in this case. The relator has been merely convicted in a summary way of an offense, and imprisoned for a specific period. He had been declared an offender, and the State alone is interested in his punishment as a satisfaction to her injured dignity, and an example to other citizens.

But if the State, through her judiciary, and simply in her own interest, imprison a citizen, it is plain that the State acting through her Executive can remit the penalty. 4 Smedes & Marshall 751; 4 Wallace 380. It is the State of Louisiana alone who acts in both instances, and not the individual who happens to be judge or governor.

I therefore concur in the decree.

Justices Howell and Wyly, were not present at the hearing of this cause.