STATE OF INDIANA *v.* SHUMAKER.

[No. 25,147½.  Filed December 28, 1928.  Petition for rehearing overruled April 2, 1929.]

*Arthur L. Gilliom*, Attorney-General, *William Thompson* and *Solon J. Carter*, for the State.

*Bingham & Bingham* and *Ethan A. Miles*, for respondent.

TRAVIS, J.—Heretofore the respondent in this action was held in contempt of this court (*State* v. *Shumaker* [1927], *ante* 623, 157 N. E. 769), and judgment was rendered that for such contempt he be fined in the sum of $250 and that he be confined on the Indiana State Farm for a period of sixty days. Thereafter the respondent filed with the court his motion for a new trial and a rehearing. And still later a petition was filed by respondent to withdraw his last motion for a new trial and a rehearing. Thereupon October 18, 1928, the clerk of the court issued and directed to the sheriff of this court a commitment. October 19, 1928, the sheriff, by virtue of such commitment, delivered the body of respondent Shumaker into the custody of the superintendent of the Indiana State Farm for confinement, as adjudged by the court. The same day, to wit, October 19, 1928, the Honorable Ed. Jackson, Governor of the State of Indiana, issued a conditional pardon to respondent, to the effect that he be pardoned from serving the sixty days at the Indiana State Farm on condition that he pay the fine and costs adjudged against him. The fine and costs were paid by respondent on said October 19, and thereupon the superintendent of the Indiana State Farm released respondent from custody by virtue of the conditional pardon issued by the Governor, and respondent was set at liberty under and by the authority of the pardon so issued. Thereupon, to wit, October 19, 1928, an information by the Attorney-General of the state was

filed in this cause in this court, informing the court of the action of the Governor attempting to pardon respondent, as hereinbefore set forth, and alleging that the pardon so given was void because of the want of power of the Governor as the chief executive officer of the state, to pardon respondent as attempted here to do, under and by the authority of the Constitution of the state granting to the Governor the power to pardon. Art. 5, §17, Constitution of Indiana.

Based upon the information, the court issued its peremptory writ to respondent to show cause, if any there be, why execution of said judgment should not be ordered, as prayed in the information, notwithstanding the pardon by the Governor. Respondent having filed his brief on his demurrer, and the time having passed for a response on the merits, we assume that he is standing on his demurrer to the information. The issue therefore thus presented is the only and sole question of the power of the Governor, under the Constitution to pardon respondent, which issue is now before us for adjudication.

In support of the information, the state, by its first proposition of law, proposes that the Governor of Indiana has no power touching pardons simply by virtue of being chief executive, but that whatever power he has to pardon is derived from the Constitution and laws of the state. It is unnecessary to enter into a discussion here in support of this proposition. This court in 1857 considered the proposition and affirmed it. *State* v. *Dunning* (1857), 9 Ind. 20. By the authority of the case just cited, the proposition to the effect that the only power the Governor of Indiana has to grant pardons is that conferred on him by the Constitution as set forth in Art. 5, §17 is confirmed.

It is proposed also by the state that the power to grant pardons, thus conferred on the Governor by the Con-

stitution, is not an unlimited or absolute power. This is denied by the respondent.

The decisions by some appellate courts upon the question of the power of the chief executive to pardon, evolve from a consideration of the common law and its relation to the formation of a democratic and a republican form of government such as exists in the states of the United States. The government of England under the early common law was an absolute monarchy. The powers incident to sovereignty were independent or self-derived powers, and vested in the king absolute. The nationals under that regime were vassals, here limited in the sense that they had no spark of inherent sovereignty in them. The king was the sole executive and administrator of his empire. In him was seated the sole judicial power of the government, which was also autocratic. In him reposed the absolute control of the power of legislation, in that he had the absolute power of veto. He was absolute in every sense except the growth of the English Constitution. Starting with the power of the nationals in gaining the rights they did by Magna Charta to the present day, the English government is not in character like the government of the United States, or the government of Indiana. Under the jurisdiction here in question—the state—all sovereign power is vested in the citizens of the state; and the citizens have the power, by virtue of such sovereignty, to do whatever, whenever they please, except by their own limitation as expressed in the highest law that may emanate from the sovereign power, the Constitution. In Indiana, the citizens, charged with the knowledge and meaning of any technical words or expressions used by them in wording the Constitution, knew where sovereignty rested under the common law of England. Knowing that, they used apt and special words to differentiate this government from that, and

by so doing, instead of reposing all the three major powers of government in one representative of the sovereign, there was a division of the powers into the three major powers of government; and, for fear one power might interfere with another power, unless more particularly specified, it was ordained by that document that the three powers of government should be divided into three separate departments; and that no person charged with official duties under one should exercise any of the functions of the other, except as expressly provided. Art. 3, §1, Constitution. The true interpretation of this is, that any one department of the government may not be controlled or even embarrassed by another department, unless so ordained in the Constitution. Could the Governor pardon every person held in contempt by the General Assembly, that department, when in assembly in the discharge of its duties, might become a howling mob. 2 Story, Constitution (5th ed.) §1503. The Supreme Court is not here arrogating unto itself a supreme position over either of the other two departments of the government. In the exercise of its functions and duties, it understands that the citizens gave to it certain inherent powers, one of which is to maintain itself free from defamatory, degrading and libelous attack which debases the character of the court. *State, ex rel.,* v. *Noble* (1889), 118 Ind. 350, 21 N. E. 244, 10 Am. St. 143, 4 L. R. A. 101. It will not do in answer to say that the sovereign may rest assured that no one of its separate departments of government will intrude upon another department to the extent that it may embarrass such other department in functioning, either to carry out its mandates or to preserve its self respect. The reasoning in the opinion by the Wisconsin Supreme Court, although *obiter dictum,* upon the question now under consideration, is of interest, and throws

much light upon the proposition. *State, ex rel.,* v. *Verage* (1922), 177 Wis. 295, 187 N. W. 830, 23 A. L. R. 491.

There is much discussion and dissension between the parties here, as shown by the briefs, upon the all-inclusive meaning of the word "offenses," as used in §17, Art. 5, of the Constitution, concerning pardons. Reference is made by respondent to cases in other jurisdictions which seem to respondent to hold that the word "offenses" includes any act which might bring upon the actor the obligation to pay a fine and suffer the loss of his liberty for a time designated. By §13 of the Bill of Rights of our Constitution, it is provided that the accused in all criminal prosecutions shall have the right to a public trial by an impartial jury. "Criminal prosecutions" here means, if anything, the prosecution of offenses. The proposition of the right to a trial by jury upon a charge of contempt of court of any character whatever has been settled in this jurisdiction, as well as in many other jurisdictions. *Dale* v. *State* (1926), 198 Ind. 110, 150 N. E. 781.

In this jurisdiction, in all criminal cases whatever, the jury shall have the right to determine the law and the facts. §19, Bill of Rights, Constitution. If a charge of contempt of court is to be held an offense, and it be further premised that an offense is a crime, the appellate courts of many different jurisdictions have violated a similar provision in the several constitutions, first, for the right of a jury trial, and, in our own instance, that the determination of the law as well as of the facts may, at the request of the person charged, be determined by a jury.

Respondent maintains that the case at bar is one of criminal contempt, and that, by virtue of coming under that category, it is a criminal prosecution, and therefore an offense. It has been held many times by this court, and by the appellate courts

of other jurisdictions, that certain contempts of court are of a criminal nature. But in no instance has it been shown to this court by respondent that any jurisdiction has held that any character of contempt of court is a crime within the meaning of the Constitution. The differentiation of the character of contempts came by their names by judicial definition, and statutes using the characterization merely adopt the name given by the courts. So that proceedings for contempt of a court are not criminal proceedings in the sense or under the definition as used in the Constitution or as defined by statute. But such proceedings are summary in character, even though presented by information, and are incidental to the proper administration of justice, and the unintimidated and unembarrassed functioning of the court.

It may be unfortunate under the state of the things of government, that this, the highest court in the jurisdiction of the Constitution, must, in some instances, not only pass upon contempt before it, and that finally, but that it itself presents the charge. In this case, however, by virtue of the fiction of the law, the charge is presented by the people themselves, the sovereign authority, by an information. The presentment of such information is not limited to the Attorney-General. It might have been presented by any one of the millionths parts which go to make up the complete sovereignty; that is, any citizen might prefer the charge. But, in the opinion of the court, the situation presented, which has been characterized by the respondent, is embarrassing to the court. The function of the pardoning power ought to be granted in that it gives vent to an individual, unbiased and separate department of government to function, as he says, by the Constitution. It is the opinion of the court upon this question that the stability of government, as laid out and maintained by the people,

is best conducted under the division as made by them, that each department exercises its own delegated powers, and that each department, unless otherwise hindered by the Constitution, exercises such inherent powers as will protect it in the performance of its major duty. *Garrigus* v. *State, ex rel.* (1884), 93 Ind. 239; *Dale* v. *State, supra; State* v. *Shumaker* (1927), *ante* 623, 157 N. E. 769.

The first forceful argument in favor of the proposition that the word "offenses" does not include charges of contempt of courts is the very understanding of the sovereign itself of its own language, because it, through its duly-elected representatives, has declared that crimes and misdemeanors shall be defined and punishment therefor fixed by statutes of this state, and not otherwise. And this definition of crimes in this state was made less than twenty-four months after the sovereign's delegates in convention had prepared the Constitution ready for submission to the sovereign to either accept or disavow. §2400 Burns 1926. Supported by: *Stevens* v. *State* (1886), 107 Ind. 185, 8 N. E. 94; *Ledgewood* v. *State* (1893), 134 Ind. 81, 33 N. E. 631; *Hinshaw* v. *State* (1919), 188 Ind. 147, 122 N. E. 418; *Fitzgibbons* v. *State* (1923), 193 Ind. 526, 141 N. E. 241. Were the contention of respondent to be affirmed, that the charge against him is a crime, and thereby subject to the pardoning power, it must follow in order to be a crime, that it be so defined and declared by legislation. This proposition the courts have repeatedly denied, and held that the General Assembly is without power to abridge the power of the courts to determine what are contempts against them, and the power to punish therefor. *Little* v. *State* (1883), 90 Ind. 338, 46 Am. Rep. 224; *Holman* v. *State* (1886), 105 Ind. 513, 5 N. E. 556; *Cheadle* v. *State* (1887), 110 Ind. 301, 11 N. E. 426, 59 Am. Rep. 199; *Hawkins* v. *State* (1890), 125 Ind. 570,

25 N. E. 818; *Dale* v. *State, supra*; *Mahoney* v. *State* (1904), 33 Ind. App. 655, 72 N. E. 151, 104 Am. St. 276.

From the foregoing it is held that a charge which prefers a contempt against a court is not a criminal action; that it is not an offense within the meaning of that word in §17 of Art. 5 of the Constitution, which grants to the executive power to pardon; that, by reason of the inherent power of the court to receive a charge of contempt and to try the cause, it has the power to enforce the execution of its judgment, notwithstanding the power to pardon granted to the executive department—the Governor.

Inasmuch as the court is informed through the information in this behalf that respondent has not served any period of the confinement under the judgment of this court, but was permitted by the Honorable Ralph Howard, superintendent of the Indiana State Farm, to go hence, by virtue of the order of pardon by the Governor, it is therefore ordered that the sheriff of this court arrest the body of respondent and, under the order heretofore issued, again deliver him to the superintendent of the Indiana State Farm and make his return to this court thereof; and it is further ordered that the respondent be incarcerated at the Indiana State Farm for a period of sixty days, as provided by the judgment of this court, and that a *mittimus* issue and be directed to the superintendent of the Indiana State Farm, commanding him as such officer to receive and safely keep the respondent Edward S. Shumaker until he has been confined for a period of sixty days, notwithstanding the pardon by the Governor.

Martin, C. J., dissents with opinion.

Gemmill, J., concurs in the dissenting opinion.

## Dissenting Opinion.*

MARTIN, C. J.—Where proceedings for contempt of court are criminal or punitive in their nature, as distinguished from those civil, remedial or coercive in their nature, the uniform holding of the courts throughout the United States has been that the case is governed by the analogies of criminal procedure, that the punishment is for a public offense (the wrong being to the public and not to the functionary to whom it is offered considered as an individual), and that the order inflicting punishment in such a case comes within the range of the pardoning prerogative. Heretofore, in this case (a proceeding for an alleged indirect criminal contempt of court), in discussing the admissibility of depositions in evidence without the consent of the respondent, I cited and discussed numerous cases supporting the statement above made (October, 1928) 163 N. E. 272, at 273, 274. See, also, 13 C. J. 97; 6 R. C. L. 540; Rapalje, Contempt §162.

Section 19, Art. 5, Constitution of Indiana, §150 Burns 1926, provides that the Governor, in whom the executive power of the state is vested, "shall have the power to grant reprieves, commutations and pardons, after conviction, for all offenses except treason and cases of impeachment,[1] subject to such regulations as may be provided by law. . . ." It appears that a majority of the members of the court have concluded that the Governor does not have a right to grant a pardon in this case because they believe a criminal contempt of court is not an "offense" within this section of the Constitution, and because they hold that this is not a "criminal prosecution" within the sections of the Constitution re-

---

*See 4 Ind. L. Jour. 550; 38 Yale L. Jour. 819; 14 Cornell L. Quart. 484; 13 Minn. L. Rev. 506.

[1]This is substantially the same provision found in the constitutions of most of the states, III Stimpson, Federal and State Constitutions 188. And see *infra*, for §2, Art. 2, U. S. Constitution.

lating to trial by jury. This conclusion is wholly at variance with the well-considered decisions of the United States Supreme Court in *Ex parte Grossman* (1925), 267 U. S. 87, 45 Sup. Ct. 332, 69 L. Ed. 527, 38 A. L. R. 131, and in *Gompers* v. *United States* (1914), 233 U. S. 604, 34 Sup. Ct. 693, 58 L. Ed. 1115, which together with other similar authority from various state courts, including the cases of *State, ex rel.,* v. *Sauvinet* (1872), 24 La. Ann. 119, 13 Am. Rep. 15,[1] and *State* v. *Magee Pub. Co.* (1924), 29 N. M. 455, 224 Pac. 1028, 38 A. L. R. 142, have been brought repeatedly to the attention of this court; see 163 N. E. 273. It was held in the Gompers case that contempts are infractions of the law visited with punishment as such, and are none the less offenses because trial by jury does not extend to them as a matter of constitutional right.

Section 19, *supra,* excepts "treason and cases of impeachment" from the pardoning power, which otherwise extends to "all offenses." Treason is a crime, but

---

[1]In *State, ex rel.,* v. *Sauvinet, supra,* the court said:

"That the offense arising from a contempt of the authority of a court is one which, from its nature, should be summarily punished, to the end that an efficient and wholesome exercise of judicial powers may be had, no one will question. But the opinion entertained to some extent, that punishments decreed for such offenses must necessarily be inflicted at the stern arbitrament of the judge, without remission or abatement by the pardoning power, we do not find to rest upon any firm basis of principle or authority. A contempt of court is an offense against the State and not an offense against the judge personally. In such a case the State is the offended party, and it belongs to the State, acting through another department of its government, to pardon or not to pardon, at its discretion, the offender.

"That this is a delicate power and should be used only in cases manifestly proper, we are at liberty in our private judgments to believe, while on the other hand we have no question that abuses in the exercise of the power of punishing for contempts may arise, although instances of the kind are rare. We can scarcely think it compatible with the genius of liberal government and free institutions that there should be no shield to protect an individual against a tyrannical exercise by a judge of his power to punish for contempt, and therefore conclude that, upon the principle of checks and balances upon which our American governments are founded, it was not intended by the framers of them that the pardoning power should not reach a party unduly deprived of his liberty, by, it might be, a hasty and petulant fiat of a judge."

public officers may be impeached "in such manner as provided by law," §8, Art. 6, Constitution, for acts which are not otherwise unlawful, such as neglect of duty, §12139 Burns 1926, and misdemeanor in office, §12104 Burns 1926.[1]  So it would seem that the makers of the Constitution in using the word "offenses" did not have in mind the narrow construction given it by the court in the case at bar, and this court in *State* v. *Dunning* (1857), 9 Ind. 20, 24, considered the word "offenses" in the broader sense.[2]

Section 2, Art. 2, Constitution of the United States provides:  "The President . . . shall have power to grant reprieves and pardons for offenses against the United States, except in cases of impeachment."  The power thus conferred (in almost the exact language of

---

[1]In *State* v. *Magee Pub. Co.*, *supra*, under a state constitutional provision identical with our own, the court said:

"Such constitutional provision constitutes a plain and clear grant of power to grant pardons, after conviction, except in cases of treason and impeachment.  Save for these, the governor has the undeniable power to grant pardons, after conviction, for all offenses.  It remains, therefore, to determine whether criminal contempt is an offense within the purview of this constitutional provision."  After reviewing the cases the court referred to the discussion in the Gompers case, *supra*, of the term "offenses" saying "the . . . fact that it is construed by the highest court in the land, makes the case of peculiar interest and of controlling force."  The court further said:

"It has occurred to us that if the word 'offenses,' as used in the Constitution, was intended to be limited to its narrow sense of embracing only strictly criminal or penal cases, in which the right to trial by jury, and to be confronted with the witnesses, and many similar characteristics attending such criminal or penal cases, were guaranteed, impeachment would not have been expressly excepted from its terms. That is certainly not an ordinary or strict criminal proceeding.  The charge is not presented by indictment or information.  Trial by jury is not guaranteed.  A conviction therefor is not followed by either fine or imprisonment.  And yet it was deemed advisable to expressly except it from the operation of the constitutional provision in question, which clearly indicates that it was never thought or intended that the term 'offenses' should be so limited, but that it should cover a wider field."

[2]In *Ex parte Grossman*, *supra*, the court said:  "The argument is that the word 'offenses' is used in the Constitution interchangeably with 'crimes' and 'criminal prosecutions.'  But as has been pointed out in *Shick* v. *U. S.*, 195 U. S. 65, 49 L. ed. 99, 1 Ann. Cas. 585, the term 'offenses' is used in the Constitution in a more comprehensive sense than are the terms 'crimes' and 'criminal prosecutions.'"

the Indiana Constitution) is, with the exception stated, unlimited and extends to every offense known to law, *Ex parte Garland* (1866), 4 Wall. (U. S.) 333, 380, including criminal contempts of court. *Ex parte Grossman, supra.*

I do not see the force or application of the historical references, made in the prevailing opinion, to the early English government. While the language of the Constitution cannot be interpreted safely except by reference to the common law and to British institutions as they were when the instrument was framed and adopted, it is clear and undisputed from the very nature of our republican form of government that the pardoning power is a power inherent in the people. It is not necessarily an executive power, because the people in adopting a constitution may confer it upon any department or officer they may see fit. *Jamison* v. *Flanner* (1924), 116 Kans. 624, 228 Pac. 82, 35 A. L. R. 973, 981. The Indiana Constitution, like the United States Constitution and the constitutions of most states, see note 1, *supra,* lodges this power or prerogative in the chief executive officer.

One of the fundamental principles adopted by the framers of the United States Constitution was the doctrine, advocated by Charles Louis de Secondat, baron of Montesquieu (1699-1755), of the division of the government into three independent departments—Legislative, Executive, and Judicial. The Constitution of the United States divides the powers it grants as follows: Article 1 of the Legislative, to Congress; Article 2 of the Executive, to the President; and Article 3, of the Judiciary, to the United States Supreme Court and such inferior courts as the Congress may from time to time ordain and establish, just as definitely and effectively as does the section (§1, Art. 3) of our State Constitution concerning the distribution of powers to the three de-

partments. There is no greater independence of the three departments under the state than under the national Constitution. The court in *Ex parte Grossman, supra*, points out that complete independence and separation of the three branches are not attained or intended, and by a series of illustrations shows that the independence of each other is qualified—that the judiciary, quite as much as legislative and the executive is dependent on the co-operation of the other two, that government may go on.

In adopting the Montesquieu doctrine, the founders of the Republic—and the makers of our state Constitution following them—set up, by the Constitution, a system of co-ordinating checks and balances. The pardoning power, granted to the executive is one of those checks and balances. An executive, in whom the power of pardon is vested, might abuse that power although he seldom does. Suppose he should pardon, without reason, all of the 6,000 prisoners in our penal institutions—another one of the checks and balances, viz., the power of impeachment (§8, Art. 6, Constitution), could then be invoked as a remedy.

Speaking of the contention that criminal contempts should not be held within the pardoning power because it would tend to destroy the independence of the judiciary and violate the constitutional principle of a separation of the legislative, executive and judicial powers, Chief Justice Taft, in the concluding paragraph of the opinion in *Ex parte Grossman, supra*, said: "It goes without saying that nowhere is there a more earnest will to maintain the independence of federal courts and the preservation of every legitimate safeguard of their effectiveness afforded by the Constitution than in this Court. But the qualified independence which they fortunately enjoy is not likely to be permanently strengthened by ignoring precedent and practice and minimizing the

importance of the co-ordinating checks and balances of the Constitution."[1]

The main opinion seems to recognize that it is "unfortunate" that this court "must . . . not only pass upon contempt before it, and that finally, but that it itself presents the charge." This "unfortunate" situation has been discussed before in this case (August 5, 1927) *ante* 623, 157 N. E. 769 at 788, 789, and its result could, in part, be corrected now by allowing the constitutionally provided system of checks and balances to operate, in which event it would be unnecessary for the court to disclaim, as it does in the prevailing opinion, that it "is not here arrogating unto itself a supreme position over either of the two other departments of the government."[2]

Gemmill, J., concurs in the dissenting opinion.

---

[1] The court also said preceding this conclusion:

"Executive clemency exists to afford relief from undue harshness or evident mistake in the operation or enforcement of the criminal law. The administration of justice by the courts is not necessarily always wise or certainly considerate of circumstances which may properly mitigate guilt. To afford a remedy, it has always been thought essential in popular governments, as well as in monarchies, to vest in some other authority than the courts power to ameliorate or avoid particular criminal judgments. It is a check intrusted to the executive for special cases. To exercise it to the extent of destroying the deterrent effect of judicial punishment would be to pervert it; but whoever is to make it useful must have full discretion to exercise it. Our Constitution confers this discretion on the highest officer in the nation in confidence that he will not abuse it. An abuse in pardoning contempts would certainly embarrass courts, but it is questionable how much more it would lessen their effectiveness than a wholesale pardon of other offenses. If we could conjure up in our minds a President willing to paralyze courts by pardoning all criminal contempts, why not a President ordering a general jail delivery? . . .

"Exceptional cases like this, if to be imagined at all, would suggest a resort to impeachment rather than to a narrow and strained construction of the general powers of the President."

[2] The case of *State, ex rel.*, v. *Verage*, cited by the court for some *obiter dicta* contained therein, expressly holds that a governor cannot pardon one committed to prison in punishment for civil contempt. While not deciding the point, the court also vaguely questions the pardoning power of the executive in either class of contempt. It may be noted that the well-reasoned decisions of the United States and the New Mexico Supreme Courts, *Ex parte Grossman, supra,* and *State* v. *Magee, supra,* had not been decided at the time *State* v. *Verage, supra,* was written. In the Verage case a dissenting opinion, in referring to certain *obiter dicta* in the main opinion said: (Continued on next page.)

"It is intimated in the majority opinion that where a defendant is imprisoned in a contempt proceeding such as in the instant case, he can find relief by repentance and by asking forgiveness of the judge who sentenced him.   No man who assumes a position righteously based on principle will ever be guilty of playing the part of a hypocrite.   It was the great Luther who, when confronted with the charge of heresy, said, 'Here I stand.'   He was willing to die for principle.   Judges are human beings, and, despite their good intentions, may be actuated by motives and resentment, and may make the cause of the court their own. . Relief from such a situation is dispensed by the exercise of the pardoning power by the executive."