STATE ex rel. James R. ROBINSON, Relator,

v.

Honorable James R. HARTENBACH, Judge, Circuit Court of St. Louis County, Respondent.

STATE ex rel. Theodore ALDRICH, Relator,

v.

Honorable James R. HARTENBACH, Judge, Circuit Court of St. Louis County, Respondent.

Nos. 70278, 70282.

Supreme Court of Missouri, En Banc.

July 26, 1988.

David C. Godfrey, Clayton, Steven S. Fluhr, St. Louis, for relator.

Michael J. Smith, Asst. Pros. Atty., George R. "Buzz" Westfall, Pros. Atty., Clayton, for respondent.

HIGGINS, Judge.

James Robinson and Theodore Aldrich, two of the jurors sequestered for the criminal trial of Walter Harvey, spliced the disconnected wires on a television-radio set in their hotel room and watched or listened to newscasts concerning the trial in violation

of the court's order. Although their misconduct was discovered shortly after the trial, the court did not commence prosecution for indirect criminal contempt for more than 2 years. They were then given a hearing after which they were found guilty of criminal contempt, fined $21,807.62 each and sentenced to imprisonment for 60 days in the Department of Justice Services, St. Louis County. Upon their request, a preliminary writ in prohibition issued from this Court, staying the execution of sentence. Because the applicable statute of limitations, section 556.036.2(2), RSMo 1986, bars prosecution for these criminal contempts after 1 year, the preliminary writ is made absolute.

The Harvey trial attracted extensive pretrial publicity that necessitated transporting the jury from Kansas City to St. Louis. Robinson and Aldrich, as members of that jury, shared a hotel room. Throughout the trial, at each adjournment, respondent read MAI–CR 2d 1.08 to admonish the jurors not to "read, view or listen to any newspaper, radio or television report of the trial." Despite this order, on the evening of the first day of trial, Robinson stripped the wires of the television-radio set, and used the bare wire to connect the set to the electrical outlet in the room that he shared with Aldrich. Both proceeded to watch a television broadcast dealing with the trial.

The jurors' misconduct was not immediately discovered and both participated in the deliberations that ultimately produced a guilty verdict. Sometime between the jury verdict on December 16, 1985, and January 10, 1986, their misconduct was discovered. The matter was then included in defendant's motion for a new trial. At the hearing on this motion both Robinson and Aldrich testified without counsel and without any statement or warnings of consequences by the court or assistant prosecuting attorney. Respondent denied the motion, determining that despite the admitted misconduct, Walter Harvey had not been prejudiced.

On April 28, 1987, the Missouri Court of Appeals, Eastern District, reversed the conviction of Walter Harvey and remanded the cause to respondent for another evidentiary hearing on the question of prejudice caused by the jurors' misconduct, *State v. Harvey*, 730 S.W.2d 271 (Mo.App.1987). On remand respondent found that the State was unable to establish conclusively that their misconduct had not been prejudicial and granted the motion for new trial.

Thereafter a notice of hearing for criminal contempt was sent to the two jurors to show cause why they should not be held in contempt for violation of the court's instruction against viewing television broadcasts concerning the case. They appeared at the February 22, 1988, hearing with counsel; no request for a jury trial was made at that time.

At the hearing the jurors declined the opportunity to present evidence on either guilt or punishment, were found guilty beyond a reasonable doubt and the punishment was assessed. This litigation ensued.

Relators contend the writ should be made absolute because: 1) the prosecution for criminal contempt occurred after the expiration of the 1 year statute of limitations; 2) relators were deprived of their right to a jury trial; 3) the court erred in admitting relators' testimony, taken without "*Miranda* warnings"; 4) the evidence was insufficient to find relators acted willfully. Specifically, relators contend that criminal contempt, section 476.110(3), RSMo 1986, is a misdemeanor and thus controlled by the 1 year statute of limitations in section 556.036.2(2), RSMo 1986. Relators reason as follows:

Premise Number 1—The statutory penalty for contempt is a fine or imprisonment in the jail of the county where the court may be sitting, or both, in the discretion of the court. Section 476.120, RSMo 1986.

Premise Number 2—A term of imprisonment in the county jail cannot exceed 1 year. Section 558.011, RSMo 1986.

Premise Number 3—If the maximum sentence to imprisonment is 1 year, or less, the crime is a misdemeanor. Section 556.016.3, RSMo 1986.

█ Conclusion—Because the maximum punishment for criminal contempt is a term

of imprisonment in the county jail and such cannot exceed 1 year, criminal contempt is a misdemeanor. The statute of limitations period applicable to a misdemeanor is 1 year. Section 556.036.2(2).

Respondent argues Premise Number 1 is erroneous because criminal contempt is not a crime but is *sui generis* and cites *Osborne v. Owsley*, 364 Mo. 544, 264 S.W.2d 332 (1954), *cert. denied*, 348 U.S. 822, 75 S.Ct. 35, 99 L.Ed. 648 (1954). This argument fails to comprehend that a proceeding *sui generis* can, and in this case does, interact with the established statutory framework. *See, e.g., Karsznia v. Kelsey*, 262 S.W.2d 844 (Mo.1953). Because contempt is *sui generis*, it could be, and in this case is, controlled by the statute of limitations applicable to misdemeanors although it is not a "crime" within the meaning of the criminal code.

Respondent argues Premise Number 2 is faulty in that contempt could be classified as a Class C or D felony because both could be punished by imprisonment in the county jail. § 558.011.2, RSMo 1986. A 3 year limitations period is applicable to Class C and D felonies. § 556.036.2(1), RSMo 1986.

This argument fails because Class C and D felonies could be punished by a term of imprisonment longer than 1 year; criminal contempt can be punished only by a sentence to imprisonment in the county jail which must be less than 1 year. Therefore, criminal contempt could not be classified as a felony.

Respondent also contends a term of imprisonment "in the county jail" could be for any length of time and is not limited to 1 year or less by section 558.011. Respondent's argument fails because section 558.011 and its subparts reveal a legislative intent to limit terms of imprisonment in the county jail to 1 year or less. Terms of imprisonment exceeding 1 year are to be served in the custody of the department of corrections and human resources. § 558.011.2.

■ Respondent argues laches should be the doctrine of limitations applicable in contempt cases and cites *State ex rel. Payne*

*v. Empire Life Ins. Co. of America*, 351 So.2d 538 (Ala.1977), *cert. denied*, 435 U.S. 969, 98 S.Ct. 1607, 56 L.Ed.2d 60 (1978). The notion that laches, an equitable doctrine, would be applicable in a contempt proceeding stems from the historical classification of contempt as an equitable remedy at common law.

Respondent's argument fails because a portion of the common law has been codified and "all courts of record in Missouri have both inherent and statutory power to punish a criminal contempt committed within or without their presence." *Osborne v. Purdome*, 244 S.W.2d 1005, 1012 (Mo.banc 1952), *cert. denied*, 343 U.S. 953, 72 S.Ct. 1046, 96 L.Ed. 1354 (1952). In this case the contumacious conduct is proscribed specifically by the contempt statute, section 476.-110(3), RSMo 1986, which authorizes punishment for criminal contempt of persons guilty of "willful disobedience of any process or order lawfully issued." Because the contempt statute is applicable, the statutory scheme requires that prosecution for criminal contempt be commenced within 1 year. § 556.036.2(2), RSMo 1986. This result allows all persons affected to know the precise limitations period for the prosecution of criminal contempt and eliminates the case by case resolution that occurs after the fact when the doctrine of laches is applied.

This mandate is also the majority rule. *See, e.g., Gompers v. U.S.*, 233 U.S. 604, 34 S.Ct. 693, 58 L.Ed. 1115 (1914); *Pate v. Toler*, 190 Ark. 465, 79 S.W.2d 444 (1935); *Gordon v. Com.*, 141 Ky. 461, 133 S.W. 206 (1911); *Com. v. Gallarelli*, 372 Mass. 573, 362 N.E.2d 923 (1977); *In re Jibb*, 123 N.J. Eq. 251, 197 A.12 (1938); *Higginbotham v. Com.*, 206 Va. 291, 142 S.E.2d 746 (1965); *State v. Phipps*, 174 Wash. 443, 24 P.2d 1073 (1933). The annotation at 100 A.L.R. 2d 439, 442 notes: "A different situation exists where punishment for the acts constituting direct contempt is barred by a statute of limitations, with the majority of cases taking the viewpoint that in such a situation the power of the court to punish for contempt is lost." In determining the applicable limitations period there is no rea-

son to distinguish those cases involving "direct" from "indirect" criminal contempt. The limitations period and the policies behind it are equally applicable to both.

Respondent argues this Court, in order to hold for relators, must overrule *Osborne v. Owsley*, 264 S.W.2d 332, which held that a contempt proceeding based on a charge of subornation of perjury was not barred by the 1 year limitations period in section 541.210, RSMo 1949 (now 556.036). It is unnecessary to overrule *Osborne v. Owsley* because it did not involve contumacious conduct proscribed specifically by the contempt statute, section 476.110. Because the court was exercising its inherent rather than statutory contempt power, the action could not properly be analogized to a misdemeanor under the statutory scheme. Thus the action was not controlled by the 1 year statute of limitations. Whether the prosecution for contempt in *Osborne v. Owsley* would be limited in time by laches or the limitations period applicable to subornation of perjury, a felony, is not before this Court.

■ Respondent suggests the contempt statute violates constitutional principles of separation of powers because it limits the court's inherent contempt power. This Court has said, "the power to punish for contempt is derived from the constitution and is part of the inherent judicial power of the courts—a power to perform what is generally recognized as the judicial function." *Osborne v. Owsley*, 264 S.W.2d at 334. Every constitutional court of common law jurisdiction has inherent power to punish for contempt and "cannot be shorn of such power by statute." *Osborne v. Purdome*, 244 S.W.2d at 1012.

Respondent's argument fails because the statute has not "shorn" contempt power from the court. The courts have recognized that although the power to punish for contempt is inherent, it has been, and is, the subject of statutory enactment, *Ex Parte Ryan*, 607 S.W.2d 888, 890–91 (Mo. App.1980), and the requirements of the statute are mandatory. *Ex Parte Hough*, 544 S.W.2d 333, 334.

In *Chicago & A. Ry. Co. v. Gildersleeve*, 219 Mo. 170, 118 S.W. 86 (1909), the court confronted the issue of what power the legislature had to limit the court's inherent contempt power. The dissenting opinion in *Gildersleeve*, later adopted as the majority view by *Ex Parte Creasy*, 243 Mo. 679, 148 S.W. 914, 923 (1912), explained:

the following propositions ... may be deduced as sound doctrine:

(a) First. A constitutional court of commonlaw power may not be shorn of the right to punish for contempt by a statutory enactment. That power, in its essence, is ingrained in such a court, and becomes a part of its very being.

(b) Second. Either as a matter of comity, or of right, the lawmaker may (within reason) somewhat regulate that power so that an arbitrary judicial discretion may not run riot, rampant, and wanton. . . .

(c) Third. The statute under review is a reasonable regulation, in nowise hostile to the inherent power to punish for contempt.

(d) That the power to regulate does not in all cases nor in this case mean the power to destroy. To regulate a court is not to destroy it.

*Creasy*, in overruling *Gildersleeve*, held the legislature could, within reason, regulate the statutory penalties for contempt.

More recently, the criminal contempt statutes have been scrutinized by Missouri courts and apparently considered reasonable because their requirements have been held to be mandatory. *See, e.g., Ex Parte Hough*, 544 S.W.2d at 334; *accord Ex Parte Brown*, 530 S.W.2d 228 (Mo. banc 1975). This is because the court's inherent power is not infringed by the contempt statute. The court will tolerate the regulation of its contempt power, but the legislature cannot be allowed, by such regulation, to substantially destroy the efficiency of the court. *Gildersleeve*, 118 S.W. at 95 (Lamm, J., dissenting).

Specifically, the limitations period applicable to contempt cases, established by the statutory framework, is neither unreasonable nor an unconstitutional infringement

of the court's inherent contempt powers. The legislature may regulate the exercise of the inherent power of courts to punish for contempt by prescribing rules of practice and procedure. *See, e.g., La Grange v. State*, 238 Ind. 689, 153 N.E.2d 593 (1958). Thus, the limitations period does not violate constitutional principles of separation of powers.

The period for bringing contempt prosecutions must be limited in time, if not by statute, then by laches. In *Gompers*, 233 U.S. at 612, 34 S.Ct. at 696, the court said, "The power to punish for contempt must have some limit in time, and in defining that limit we should have regard to what has been the policy of the law from the foundation of the Government. By analogy if not by enactment the limit is three years [under the applicable statute of limitations]." In this case the 1 year limitations period in section 556.036, established as an expression of public policy through statutory enactment to regulate practice and procedure in contempt cases, is the proper limit on the time in which prosecution must commence.

Because the prosecution in this case was commenced beyond the 1 year limitations period, the court was without jurisdiction to entertain it.

The preliminary writ in prohibition is made absolute.

DONNELLY, WELLIVER, ROBERTSON, RENDLEN, JJ., and KENNEDY, Special Judge, concur.

BLACKMAR, J., dissents in separate opinion filed.

BILLINGS, C.J., not sitting.

BLACKMAR, Judge, dissenting.

The principal opinion is manifestly in conflict with *Osborne v. Owsley*, 264 S.W.2d 332 (Mo. banc 1954), which holds that the one-year statute of limitations contained in § 541.210, RSMo 1949, had no application to proceedings in criminal contempt. Nothing in the language of the present statute of limitations for misdemeanors, § 556.036.2(2), RSMo 1986, indicates that the legislature intended the section to apply to contempt actions.

The statutes on contempt (§§ 476.110 through 476.150) are of a kind which recognize and confirm the contempt power, rather than seeking to limit or to restrict it.[1] These statutes are of long standing and were in place when *Osborne v. Owsley, supra,* was decided. Nothing in that opinion shows that the Court gave any attention at all to the distinction between the acts of contempt enumerated in § 476.110, and those which cannot be fitted into one of the five paragraphs of the section. So *Osborne v. Owsley* is in point on the issue of limitations. Under the reasoning of the principal opinion, offenses which come within the express language of the statute are subject to one period of limitation whereas offenses not specifically defined in the statute are subject to another undefined period of limitation. This is not a desirable situation.

I would agree that there should be some time limitation on the power of a court to punish for contempt. One possible way for defining a limitation period would be that used by the federal courts following *Gompers v. United States*, 233 U.S. 604, 34 S.Ct. 693, 58 L.Ed. 1115 (1914)—that is, to borrow an analogous statute of limitations from the body of statutory law. *Osborne v. Owsley, supra,* apparently rejected this expedient, and I see no reason to depart from that holding. The alternative is to apply the concept of laches, so as to preclude contempt convictions when there has been unreasonable delay. I am confident of the ability of our courts, subject to the supervisory authority of this Court, to apply the doctrine of laches on a case-by-case basis.

Here the facts were brought out during the hearing on the motion for new trial. The respondent did not go forward with the contempt proceedings until after he had

---

1. *Dale v. State*, 198 Ind. 110, 150 N.E. 781, 784[4] (1926); *In Re Huff*, 352 Mich. 402, 91 N.W.2d 613, 619[6] (1958); *In Re Grand Jury Proceedings*, 384 Mich. 24, 179 N.W.2d 383, 389 (1970); *State v. Shumaker*, 200 Ind. 716, 164 N.E. 408, 410 (1928).

disposed of the principal case by sustaining the defendant's motion for new trial. The petitioners were fully aware of the material facts, and quite able to present their defenses. The trial judge clearly felt that he should wait until he could determine what damage had been caused by the disobedience. Some of us might have proceeded in a different manner, but I cannot find his decision arbitrary or unreasonable. It is unfortunate if he is to be stripped of his power, so that a flagrant act of contempt goes unpunished, when neither the governing statutes nor our prior decisions call for this drastic action. There may also be harmful consequences for the judicial system if we restrict our inherent powers unnecessarily. It is quite possible that matters which should be punished as contempt may not be discovered within one year.

This is not an appropriate case for discussion of the legislature's power to define or limit the contempt authority of the courts, because no such limitation has been attempted. The question, properly conceived, is whether we should borrow the misdemeanor statute of limitations in determining what limitations should apply to contempt actions. My answer, for the reasons outlined, is in the negative.

I believe that the respondent did not exceed his jurisdiction by reason of lapse of time. It follows that the absolute rule of prohibition is not properly issued on the ground assigned. There may be other defects in the proceedings which could be reviewed on writ of prohibition or habeas corpus, but the principal opinion does not discuss these and so I do not reach them. I would quash the preliminary rule without prejudice to the determination of other issues in a habeas corpus proceeding.